Chief Justice ROBERTS delivered the opinion of the Court.
*1720 Respondent Russell Bartlett sued petitioners-two police officers-alleging that they retaliated against him for his protected First Amendment speech by arresting him for disorderly conduct and resisting arrest. The officers had probable cause to arrest Bartlett, and we now decide whether that fact defeats Bartlett's First Amendment claim as a matter of law.
I
A
Bartlett was arrested during "Arctic Man," a weeklong winter sports festival held in the remote Hoodoo Mountains near Paxson, Alaska. Paxson is a small community that normally consists of a few dozen residents. But once a year, upwards of 10,000 people descend on the area for Arctic Man, an event known for both extreme sports and extreme alcohol consumption. The mainstays are high-speed ski and snowmobile races, bonfires, and parties. During that week, the Arctic Man campground briefly becomes one of the largest and most raucous cities in Alaska.
The event poses special challenges for law enforcement. Snowmobiles, alcohol, and freezing temperatures do not always mix well, and officers spend much of the week responding to snowmobile crashes, breaking up fights, and policing underage drinking. Given the remote location of the event, Alaska flies in additional officers from around the State to provide support. Still, the number of police remains limited. Even during the busiest periods of the event, only six to eight officers are on patrol at a time.
On the last night of Arctic Man 2014, Sergeant Luis Nieves and Trooper Bryce Weight arrested Bartlett. The parties dispute certain details about the arrest but agree on the general course of events, some of which were captured on video by a local news reporter.
At around 1:30 a.m., Sergeant Nieves and Bartlett first crossed paths. Nieves was asking some partygoers to move their beer keg inside their RV because minors had been making off with alcohol. According to Nieves, Bartlett began belligerently yelling to the RV owners that they should not speak with the police. Nieves approached Bartlett to explain the situation, but Bartlett was highly intoxicated and yelled at him to leave. Rather than escalate the situation, Nieves left. Bartlett disputes that account. According to Bartlett, he was not drunk at that time and never yelled at Nieves. He claims it was Nieves who became aggressive when Bartlett refused to speak with him.
Several minutes later, Bartlett saw Trooper Weight asking a minor whether he and his underage friends had been drinking. According to Weight, Bartlett approached in an aggressive manner, stood between Weight and the teenager, and yelled with slurred speech that Weight should not speak with the minor. Weight claims that Bartlett then stepped very close to him in a combative way, so Weight pushed him back. Sergeant Nieves saw the *1721 confrontation and rushed over, arriving right after Weight pushed Bartlett. Nieves immediately initiated an arrest, and when Bartlett was slow to comply with his orders, the officers forced him to the ground and threatened to tase him.
Again, Bartlett tells a different story. He denies being aggressive, and claims that he stood close to Weight only in an effort to speak over the loud background music. And he was slow to comply with Nieves's orders, not because he was resisting arrest, but because he did not want to aggravate a back injury. After Bartlett was handcuffed, he claims that Nieves said: "[B]et you wish you would have talked to me now." 712 Fed. Appx. 613, 616 (C.A.9 2017).
The officers took Bartlett to a holding tent, where he was charged with disorderly conduct and resisting arrest. He had sustained no injuries during the episode and was released a few hours later.
B
The State ultimately dismissed the criminal charges against Bartlett, and Bartlett then sued the officers under 42 U.S.C. § 1983, which provides a cause of action for state deprivations of federal rights. As relevant here, he claimed that the officers violated his First Amendment rights by arresting him in retaliation for his speech. The protected speech, according to Bartlett, was his refusal to speak with Nieves earlier in the evening and his intervention in Weight's discussion with the underage partygoer. The officers responded that they arrested Bartlett because he interfered with an investigation and initiated a physical confrontation with Weight. The District Court granted summary judgment for the officers. The court determined that the officers had probable cause to arrest Bartlett and held that the existence of probable cause precluded Bartlett's First Amendment retaliatory arrest claim.
The Ninth Circuit disagreed. 712 Fed. Appx. 613. Relying on its prior decision in Ford v. Yakima , 706 F. 3d 1188 (2013), the court held that a plaintiff can prevail on a First Amendment retaliatory arrest claim even in the face of probable cause for the arrest. According to the Ninth Circuit, Bartlett needed to show only (1) that the officers' conduct would "chill a person of ordinary firmness from future First Amendment activity," and (2) that he had advanced evidence that would "enable him ultimately to prove that the officers' desire to chill his speech was a but-for cause" of the arrest. 712 Fed. Appx. at 616 (internal quotation marks omitted). The court concluded that Bartlett had satisfied both requirements: A retaliatory arrest is sufficiently chilling, and Bartlett had presented enough evidence that his speech was a but-for cause of the arrest. The only causal evidence relied on by the court was Bartlett's affidavit alleging that Sergeant Nieves said "bet you wish you would have talked to me now." If that allegation were true, the court reasoned, a jury might conclude that the officers arrested Bartlett in retaliation for his statements earlier that night.
The officers petitioned for review in this Court, and we granted certiorari. 585 U.S. ----, 138 S.Ct. 2709, 201 L.Ed.2d 1095 (2018).
II
We are asked to resolve whether probable cause to make an arrest defeats a claim that the arrest was in retaliation for speech protected by the First Amendment. We have considered this issue twice in recent years. On the first occasion, we ultimately left the question unanswered because we decided the case on the alternative ground of qualified immunity. See *1722 Reichle v. Howards , 566 U.S. 658, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012). We took up the question again last Term in Lozman v.Riviera Beach, 585 U.S. ----, 138 S.Ct. 1945, 201 L.Ed.2d 342 (2018). Lozman involved unusual circumstances in which the plaintiff was arrested pursuant to an alleged "official municipal policy" of retaliation. Id., at ----, 138 S.Ct., at 1954. Because those facts were "far afield from the typical retaliatory arrest claim," we reserved judgment on the broader question presented and limited our holding to arrests that result from official policies of retaliation. Id., at ----, 138 S.Ct., at 1953-1954. In such cases, we held, probable cause does not categorically bar a plaintiff from suing the municipality. Id., at ---- - ----, 138 S.Ct., at 1954-1955. We now take up the question once again, this time in a more representative case.
A
"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. Hartman v. Moore , 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006). If an official takes adverse action against someone based on that forbidden motive, and "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," the injured person may generally seek relief by bringing a First Amendment claim. Ibid. (citing Crawford-El v. Britton , 523 U.S. 574, 593, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) ; Mt. Healthy City Bd. of Ed. v. Doyle , 429 U.S. 274, 283-284, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) ).
To prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." Hartman , 547 U.S. at 259, 126 S.Ct. 1695. It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured-the motive must cause the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive. Id., at 260, 126 S.Ct. 1695 (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway").
For example, in Mt. Healthy , a teacher claimed that a school district refused to rehire him in retaliation for his protected speech. We held that even if the teacher's "protected conduct played a part, substantial or otherwise, in [the] decision not to rehire," he was not entitled to reinstatement "if the same decision would have been reached" absent his protected speech. 429 U.S. at 285, 97 S.Ct. 568. Regardless of the motives of the school district, we concluded that the First Amendment "principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the [protected speech]." Id., at 285-286, 97 S.Ct. 568.
For a number of retaliation claims, establishing the causal connection between a defendant's animus and a plaintiff's injury is straightforward. Indeed, some of our cases in the public employment context "have simply taken the evidence of the motive and the discharge as sufficient for a circumstantial demonstration that the one caused the other," shifting the burden to the defendant to show he would have taken the challenged action even without the impermissible motive. Hartman , 547 U.S. at 260, 126 S.Ct. 1695 (citing Mt. Healthy , 429 U.S. at 287, 97 S.Ct. 568 ;
*1723 Arlington Heights v. Metropolitan Housing Development Corp. , 429 U.S. 252, 270, n. 21, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) ). But the consideration of causation is not so straightforward in other types of retaliation cases.
In Hartman , for example, we addressed retaliatory prosecution cases, where "proving the link between the defendant's retaliatory animus and the plaintiff's injury ... 'is usually more complex than it is in other retaliation cases.' " Lozman , 585 U.S., at ----, 138 S.Ct., at 1952-1953 (quoting Hartman , 547 U.S. at 261, 126 S.Ct. 1695 ). Unlike most retaliation cases, in retaliatory prosecution cases the official with the malicious motive does not carry out the retaliatory action himself-the decision to bring charges is instead made by a prosecutor, who is generally immune from suit and whose decisions receive a presumption of regularity. Lozman , 585 U.S., at ---- - ----, 138 S.Ct., at 1952-1953. Thus, even when an officer's animus is clear, it does not necessarily show that the officer "induced the action of a prosecutor who would not have pressed charges otherwise." Hartman , 547 U.S. at 263, 126 S.Ct. 1695.
To account for this "problem of causation" in retaliatory prosecution claims, Hartman adopted the requirement that plaintiffs plead and prove the absence of probable cause for the underlying criminal charge. Ibid. ; see id., at 265-266, 126 S.Ct. 1695. As Hartman explained, that showing provides a "distinct body of highly valuable circumstantial evidence" that is "apt to prove or disprove" whether retaliatory animus actually caused the injury: "Demonstrating that there was no probable cause for the underlying criminal charge will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution, while establishing the existence of probable cause will suggest that prosecution would have occurred even without a retaliatory motive." Id., at 261, 126 S.Ct. 1695. Requiring plaintiffs to plead and prove the absence of probable cause made sense, we reasoned, because the existence of probable cause will be at issue in "practically all" retaliatory prosecution cases, has "high probative force," and thus "can be made mandatory with little or no added cost." Id., at 265, 126 S.Ct. 1695. Moreover, imposing that burden on plaintiffs was necessary to suspend the presumption of regularity underlying the prosecutor's charging decision-a presumption we "do not lightly discard." Id., at 263, 126 S.Ct. 1695 ; see also id., at 265, 126 S.Ct. 1695. Thus, Hartman requires plaintiffs in retaliatory prosecution cases to show more than the subjective animus of an officer and a subsequent injury; plaintiffs must also prove as a threshold matter that the decision to press charges was objectively unreasonable because it was not supported by probable cause.
B
Officers Nieves and Weight argue that the same no-probable-cause requirement should apply to First Amendment retaliatory arrest claims. Their primary contention is that retaliatory arrest claims involve causal complexities akin to those we identified in Hartman , and thus warrant the same requirement that plaintiffs plead and prove the absence of probable cause. Brief for Petitioners 20-30.
As a general matter, we agree. As we recognized in Reichle and reaffirmed in Lozman , retaliatory arrest claims face some of the same challenges we identified in Hartman : Like retaliatory prosecution cases, "retaliatory arrest cases also present a tenuous causal connection between the defendant's alleged animus and the plaintiff's injury." Reichle , 566 U.S. at 668, 132 S.Ct. 2088. The causal inquiry is complex *1724 because protected speech is often a "wholly legitimate consideration" for officers when deciding whether to make an arrest. Ibid. ; Lozman , 585 U.S., at ----, 138 S.Ct., at 1953. Officers frequently must make "split-second judgments" when deciding whether to arrest, and the content and manner of a suspect's speech may convey vital information-for example, if he is "ready to cooperate" or rather "present[s] a continuing threat." Id. , at ----, 138 S.Ct., at 1953 (citing District of Columbiav.Wesby , 583 U.S. ----, ----, 138 S.Ct. 577, 587-588, 199 L.Ed.2d 453 (2018) ("suspect's untruthful and evasive answers to police questioning could support probable cause")). Indeed, that kind of assessment happened in this case. The officers testified that they perceived Bartlett to be a threat based on a combination of the content and tone of his speech, his combative posture, and his apparent intoxication.
In addition, "[l]ike retaliatory prosecution cases, evidence of the presence or absence of probable cause for the arrest will be available in virtually every retaliatory arrest case." Reichle, 566 U.S. at 668, 132 S.Ct. 2088. And because probable cause speaks to the objective reasonableness of an arrest, see Ashcroft v. al-Kidd , 563 U.S. 731, 736, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011), its absence will-as in retaliatory prosecution cases-generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite.
To be sure, Reichle and Lozman also recognized that the two claims give rise to complex causal inquiries for somewhat different reasons. Unlike retaliatory prosecution cases, retaliatory arrest cases do not implicate the presumption of prosecutorial regularity or necessarily involve multiple government actors (although this case did). Reichle , 566 U.S. at 668-669, 132 S.Ct. 2088 ; Lozman , 585 U.S., at ----, 138 S.Ct., at 1953-1954. But regardless of the source of the causal complexity, the ultimate problem remains the same. For both claims, it is particularly difficult to determine whether the adverse government action was caused by the officer's malice or the plaintiff's potentially criminal conduct. See id. , at ----, 138 S.Ct., at 1953 (referring to "the complexity of proving (or disproving) causation" in retaliatory arrest cases). Because of the "close relationship" between the two claims, Reichle , 566 U.S. at 667, 132 S.Ct. 2088, their related causal challenge should lead to the same solution: The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest.
Bartlett, in defending the decision below, argues that the "causation in retaliatory-arrest cases is not inherently complex" because the "factfinder simply must determine whether the officer intended to punish the plaintiff for the plaintiff's protected speech." Brief for Respondent 36-37; see also post , at 1737 - 1738 (SOTOMAYOR, J., dissenting). That approach fails to account for the fact that protected speech is often a legitimate consideration when deciding whether to make an arrest, and disregards the resulting causal complexity previously recognized by this Court. See Reichle , 566 U.S. at 668, 132 S.Ct. 2088 ; Lozman , 585 U.S., at ----, 138 S.Ct., at 1953.
Bartlett's approach dismisses the need for any threshold showing, moving directly to consideration of the subjective intent of the officers. In the Fourth Amendment context, however, "we have almost uniformly rejected invitations to probe subjective intent." al-Kidd , 563 U.S. at 737, 131 S.Ct. 2074 ; see also Kentucky v. King , 563 U.S. 452, 464, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011) ("Legal tests based *1725 on reasonableness are generally objective, and this Court has long taken the view that evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." (internal quotation marks omitted)). Police officers conduct approximately 29,000 arrests every day-a dangerous task that requires making quick decisions in "circumstances that are tense, uncertain, and rapidly evolving." Graham v. Connor , 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). To ensure that officers may go about their work without undue apprehension of being sued, we generally review their conduct under objective standards of reasonableness. See Atwater v. Lago Vista , 532 U.S. 318, 351, and n. 22, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) ; Harlow v. Fitzgerald , 457 U.S. 800, 814-819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, when reviewing an arrest, we ask "whether the circumstances, viewed objectively, justify [the challenged] action," and if so, conclude "that action was reasonable whatever the subjective intent motivating the relevant officials." al-Kidd , 563 U.S. at 736, 131 S.Ct. 2074 (internal quotation marks omitted). A particular officer's state of mind is simply "irrelevant," and it provides "no basis for invalidating an arrest." Devenpeck v. Alford , 543 U.S. 146, 153, 155, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004).
Bartlett's purely subjective approach would undermine that precedent by allowing even doubtful retaliatory arrest suits to proceed based solely on allegations about an arresting officer's mental state. See Lozman , 585 U.S., at ----, 138 S.Ct., at 1953. Because a state of mind is "easy to allege and hard to disprove," Crawford-El , 523 U.S. at 585, 118 S.Ct. 1584, a subjective inquiry would threaten to set off "broad-ranging discovery" in which "there often is no clear end to the relevant evidence," Harlow , 457 U.S. at 817, 102 S.Ct. 2727. As a result, policing certain events like an unruly protest would pose overwhelming litigation risks. Any inartful turn of phrase or perceived slight during a legitimate arrest could land an officer in years of litigation. Bartlett's standard would thus "dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." Gregoire v. Biddle , 177 F. 2d 579, 581 (C.A.2 1949) (Learned Hand, C.J.). It would also compromise evenhanded application of the law by making the constitutionality of an arrest "vary from place to place and from time to time" depending on the personal motives of individual officers. Devenpeck , 543 U.S. at 154, 125 S.Ct. 588. Yet another "predictable consequence" of such a rule is that officers would simply minimize their communication during arrests to avoid having their words scrutinized for hints of improper motive-a result that would leave everyone worse off. Id., at 155, 125 S.Ct. 588.
Adopting Hartman 's no-probable-cause rule in this closely related context addresses those familiar concerns. Absent such a showing, a retaliatory arrest claim fails. But if the plaintiff establishes the absence of probable cause, "then the Mt. Healthy test governs: The plaintiff must show that the retaliation was a substantial or motivating factor behind the [arrest], and, if that showing is made, the defendant can prevail only by showing that the [arrest] would have been initiated without respect to retaliation." Lozman , 585 U.S., at ----, 138 S.Ct., at 1952-1953 (citing Hartman , 547 U.S. at 265-266, 126 S.Ct. 1695 ).[1]
*1726 C
Our conclusion is confirmed by the common law approach to similar tort claims. When defining the contours of a claim under § 1983, we look to "common-law principles that were well settled at the time of its enactment." Kalina v. Fletcher , 522 U.S. 118, 123, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) ; Manuelv.Joliet , 580 U.S. ----, ----, 137 S.Ct. 911, 1920-1921, 197 L.Ed.2d 312 (2017) (common law principles "guide" the definition of claims under § 1983 ).
As the parties acknowledge, when § 1983 was enacted in 1871, there was no common law tort for retaliatory arrest based on protected speech. See Brief for Petitioners 43; Brief for Respondent 20. We therefore turn to the common law torts that provide the "closest analogy" to retaliatory arrest claims. Heck v. Humphrey , 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). The parties dispute whether the better analog is false imprisonment or malicious prosecution. At common law, false imprisonment arose from a "detention without legal process," whereas malicious prosecution was marked "by wrongful institution of legal process." Wallace v. Kato , 549 U.S. 384, 389-390, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007).[2] Here, both claims suggest the same result: The presence of probable cause should generally defeat a First Amendment retaliatory arrest claim. See generally Lozman , 585 U.S., at ---- - ----, 138 S.Ct., at 1950-1951 (THOMAS, J., dissenting).
Malicious prosecution required the plaintiff to show that the criminal charge against him "was unfounded, and that it was made without reasonable or probable cause, and that the defendant in making or instigating it was actuated by malice." Wheeler v. Nesbitt , 65 U.S. 544, 24 How. 544, 549-550, 16 L.Ed. 765 (1861) ; see also Restatement of Torts § 653 (1938). It has long been "settled law" that malicious prosecution requires proving "the want of probable cause," and Bartlett does not argue otherwise. Brown v. Selfridge , 224 U.S. 189, 191, 32 S.Ct. 444, 56 L.Ed. 727 (1912) ; see also Wheeler , 24 How. at 550 (noting that "[w]ant of reasonable and probable cause" is an "element in the action for a malicious criminal prosecution").
For claims of false imprisonment, the presence of probable cause was generally a complete defense for peace officers. See T. Cooley, Law of Torts 175 (1880); 1 F. Hilliard, The Law of Torts or Private Wrongs 207-208, and n. (a) (1859). In such cases, arresting officers were protected from liability if the arrest was "privileged." At common law, peace officers were privileged to make warrantless arrests based on probable cause of the commission of a felony or certain misdemeanors. See Restatement of Torts §§ 118, 119, 121 (1934) ; see also Cooley, Law of Torts, at 175-176 (stating that peace officers who make arrests *1727 based on probable cause "will be excused, even though it appear afterwards that in fact no felony had been committed"); see generally Atwater , 532 U.S. at 340-345, 121 S.Ct. 1536 (reviewing the history of warrantless arrests for misdemeanors). Although the exact scope of the privilege varied somewhat depending on the jurisdiction, the consistent rule was that officers were not liable for arrests they were privileged to make based on probable cause.
D
Although probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so. In such cases, an unyielding requirement to show the absence of probable cause could pose "a risk that some police officers may exploit the arrest power as a means of suppressing speech." Lozman , 585 U.S., at ----, 138 S.Ct., at 1953-1954.
When § 1983 was adopted, officers were generally privileged to make warrantless arrests for misdemeanors only in limited circumstances. See Restatement of Torts § 121, Comments e , h , at 262-263. Today, however, "statutes in all 50 States and the District of Columbia permit warrantless misdemeanor arrests" in a much wider range of situations-often whenever officers have probable cause for "even a very minor criminal offense." Atwater , 532 U.S. at 344-345, 354, 121 S.Ct. 1536 ; see id., at 355-360, 121 S.Ct. 1536 (listing state statutes).
For example, at many intersections, jaywalking is endemic but rarely results in arrest. If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest. In such a case, because probable cause does little to prove or disprove the causal connection between animus and injury, applying Hartman 's rule would come at the expense of Hartman 's logic.
For those reasons, we conclude that the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been. Cf. United States v. Armstrong , 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). That showing addresses Hartman 's causal concern by helping to establish that "non-retaliatory grounds [we]re in fact insufficient to provoke the adverse consequences." 547 U.S. at 256, 126 S.Ct. 1695. And like a probable cause analysis, it provides an objective inquiry that avoids the significant problems that would arise from reviewing police conduct under a purely subjective standard. Because this inquiry is objective, the statements and motivations of the particular arresting officer are "irrelevant" at this stage. Devenpeck , 543 U.S. at 153, 125 S.Ct. 588. After making the required showing, the plaintiff's claim may proceed in the same manner as claims where the plaintiff has met the threshold showing of the absence of probable cause. See Lozman , 585 U.S., at ----, 138 S.Ct., at 1952-1953.
* * *
In light of the foregoing, Bartlett's retaliation claim cannot survive summary judgment. As an initial matter, the record contains insufficient evidence of retaliation on the part of Trooper Weight. The only evidence of retaliatory animus *1728 identified by the Ninth Circuit was Bartlett's affidavit stating that Sergeant Nieves said "bet you wish you would have talked to me now." 712 Fed. Appx. at 616. But that allegation about Nieves says nothing about what motivated Weight , who had no knowledge of Bartlett's prior run-in with Nieves. Cf. Lozman , 585 U.S., at ----, 138 S.Ct., at 1953-1954 (plaintiff "likely could not have maintained a retaliation claim against the arresting officer" when there was "no showing that the officer had any knowledge of [the plaintiff's] prior speech").
In any event, Bartlett's claim against both officers cannot succeed because they had probable cause to arrest him. As the Court of Appeals explained:
"When Sergeant Nieves initiated Bartlett's arrest, he knew that Bartlett had been drinking, and he observed Bartlett speaking in a loud voice and standing close to Trooper Weight. He also saw Trooper Weight push Bartlett back.... [T]he test is whether the information the officer had at the time of making the arrest gave rise to probable cause. We agree with the district court that it did; a reasonable officer in Sergeant Nieves's position could have concluded that Bartlett stood close to Trooper Weight and spoke loudly in order to challenge him, provoking Trooper Weight to push him back." 712 Fed. Appx. at 615 (citations and internal quotation marks omitted).
Because there was probable cause to arrest Bartlett, his retaliatory arrest claim fails as a matter of law. Accordingly, the judgment of the United States Court of Appeals for the Ninth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.
It is so ordered.
Justice THOMAS, concurring in part and concurring in the judgment.
When 42 U.S.C. § 1983 was enacted, "the common law recognized probable cause as an important element for ensuring that arrest-based torts did not unduly interfere with the objectives of law enforcement." Lozman v.Riviera Beach , 585 U.S. ----, ----, 138 S.Ct. 1945, 1958, 201 L.Ed.2d 342 (2018) (THOMAS, J., dissenting). Applying that principle resolves this case: "[P]laintiffs bringing a First Amendment retaliatory-arrest claim under § 1983 should have to plead and prove a lack of probable cause." Ibid. The Court acknowledges as much, ante, at 1726 - 1727, and I join the portions of the Court's opinion adopting that rule.[1] I do not join Part II-D, however, because I do not agree that "a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." Ante, at 1727. That qualification has no basis in either the common law or our First Amendment precedents.
As the Court explains, "[w]hen defining the contours of a claim under § 1983, we look to 'common-law principles that were well settled at the time of its enactment.' " Ante, at 1726. Because no common-law tort for retaliatory arrest in violation of the freedom of speech existed when § 1983 was enacted, we "look to the common-law torts that 'provid[e] the closest analogy' to this claim." Lozman , 585 U.S., at ----, 138 S.Ct., at 1957 (opinion of THOMAS, J.). Here, those torts are false imprisonment, *1729 malicious arrest, and malicious prosecution. Ibid.
The existence of probable cause generally excused an officer from liability for these three torts, without regard to the treatment of similarly situated individuals. For instance, a constable who made an arrest "on reasonable grounds of belief" that a felony had been committed was "excused" from liability for false imprisonment. T. Cooley, Law of Torts 175 (1879) (Cooley); Lozman , supra, at 1721 - 1722, 138 S.Ct., at 1957-1958 (opinion of THOMAS, J.). And the absence of probable cause was central to both malicious arrest and malicious prosecution. Cooley 180-181; Lozman , supra, at 1722 - 1723, 138 S.Ct., at 1957-1958 (opinion of THOMAS, J.). As the Court puts it, "the consistent rule was that officers were not liable for arrests they were privileged to make based on probable cause." Ante, at 1727.
Rather than adhere to this rule, the majority carves out an exception to the no-probable-cause requirement for plaintiffs who "presen[t] objective evidence" that they were "arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." Ante, at 1727. The common law provides no support for this exception. Indeed, the majority cites not a single common-law case that supports imposing liability based on an officer's treatment of similarly situated individuals. The majority instead suggests that its exception responds to the fact that States today " 'permit warrantless misdemeanor arrests' " for many " 'minor criminal offense[s],' " whereas "[w]hen § 1983 was adopted, officers were generally privileged to make warrantless arrests for misdemeanors only in limited circumstances." Ibid . But discomfort with the number of warrantless arrests that are privileged today is an issue for state legislatures, not a license for this Court to fashion an exception to a previously "consistent rule." Ante, at 1726 - 1727.
The majority's exception is also untethered from our First Amendment precedents. In Hartman v. Moore , 547 U.S. 250, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006), we expressly declined to create any exceptions to the rule that a plaintiff alleging retaliatory prosecution in violation of the First Amendment must plead and prove the absence of probable cause. See id. , at 264-266, and n. 10, 126 S.Ct. 1695. The majority today imports its "qualification" from our jurisprudence on selective-prosecution claims. Ante , at 1727 - 1728, 1729 - 1730 (citing United States v. Armstrong , 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) ). But "[t]he requirements for a selective-prosecution claim draw on 'ordinary equal protection standards,' " not the First Amendment. Id. , at 465, 116 S.Ct. 1480. That jurisprudence therefore is not relevant here. Cf. Whren v. United States , 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ("[T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause ... ").
With no guidance from the common law or relevant precedents, the majority crafts its exception as a matter of policy. But this "narrow" qualification threatens to derail our retaliation jurisprudence in several ways. For one, although the majority's stated concern is with " 'warrantless misdemeanor arrests' " for " 'very minor' " offenses like "jaywalking," ante, at 1727 - 1728, its exception apparently applies to all offenses, including serious felonies. This overbroad exception thus is likely to encourage protracted litigation about which individuals are "similarly situated," ibid. , while doing little to vindicate First Amendment rights. Moreover, the majority's rule risks chilling law enforcement officers from making arrests for fear of *1730 liability, thus flouting the reasoning behind the emphasis on probable cause in arrest-based torts at common law. Lozman , supra, at 1721 - 1722, 138 S.Ct., at 1957-1958 (opinion of THOMAS, J.). In short, the majority's exception lacks the support of history, precedent, and sound policy.
* * *
The requirement that plaintiffs bringing First Amendment retaliatory-arrest claims plead and prove the absence of probable cause is supported by the common law and our First Amendment precedents. The majority's new exception has no basis in either. Accordingly, I join all but Part II-D of the majority opinion.

Justice SOTOMAYOR would have us extend Mt. Healthy and rely on that "tried and true" approach as the exclusive standard in the retaliatory arrest context. See post , at 1735 - 1737, 1742 (dissenting opinion). But not even respondent Bartlett argues for such a rule. And since our decisions in Hartman and Reichle , no court of appeals has applied that approach in retaliatory arrest cases of this sort. Justice SOTOMAYOR criticizes the Court for spending "[m]uch of its opinion ... analogizing to Hartman ," post, at 1736 - 1737, but of course Hartman is our precedent most directly on point. To the extent retaliatory arrest cases raise concerns distinct from that precedent, we have departed from Hartman to afford greater First Amendment protection. See infra , at 1741 - 1742.

For our purposes, we need not distinguish between the torts of false imprisonment and false arrest, which are "virtually synonymous." 35 C.J. S., False Imprisonment § 2, p. 522 (2009) ; see also Wallace , 549 U.S. at 388-389, 127 S.Ct. 1091.

The majority implies that the Ninth Circuit does not apply Mt. Healthy . Ante, at 1725, n. 1 ("since ... Hartman and Reichle , no court of appeals has applied [the Mt. Healthy ] approach"). That is not readily apparent. Because Hartman 's no-probable-cause requirement does not apply to retaliatory police action in the Ninth Circuit, such claims are handled as " 'ordinary' retaliation claim[s]," Skoog v. County of Clackamas , 469 F. 3d 1221, 1234 (2006), which in the Ninth Circuit (as elsewhere) means that retaliatory motive must be the "but-for cause of the defendant's action," id., at 1232. That but-for causation requirement for retaliation claims derives from Mt. Healthy . See Hartman v. Moore , 547 U.S. 250, 260, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) ; Crawford-El v. Britton , 523 U.S. 574, 593, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) ; see also Lacey v. Maricopa County , 693 F. 3d 896, 916-917 (C.A.9 2012) (en banc) (retaliatory arrest plaintiff must show that deterrence of speech "was a substantial or motivating factor" and also "ultimately" be able to show " 'but-for causation' " (quoting Hartman 's discussion of Mt. Healthy )).
In any event, the majority's criticism is a red herring. There is nothing novel about applying Mt. Healthy in the retaliatory arrest context. E.g., Lozmanv.Riviera Beach , 585 U.S. ----, ---- - ----, 138 S.Ct. 1945, 1954-1955, 201 L.Ed.2d 342 (2018). The same cannot be said of the test concocted by the majority.