[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-12131

Non-Argument Calendar

_____

HANNIBAL BURESS,

Plaintiff-Appellee,

*versus*

CITY OF MIAMI, et al.,

Defendants,

ELIO VILLEGAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-23078-MGC

_____

Before NEWSOM, BRASHER, and BLACK, Circuit Judges.

PER CURIAM:

This case arises from the arrest of Hannibal Buress for disorderly intoxication.  Buress brought a lawsuit against the City of Miami, Miami Police Officer Luis Verne, and Miami Police Officer Elio Villegas, alleging violations of 42 U.S.C. § 1983 for false arrest, retaliatory arrest, failure to intervene, and unlawful policy and practice, as well as state law claims for malicious prosecution and false arrest.  This appeal concerns Count III of Buress's First Amended Complaint, alleging Officer Villegas failed to intervene in a false arrest.  Villegas contends the district court erred in denying his motion to dismiss Count III based on qualified immunity.  After review,[1] we affirm the district court.

_____

[1] We review the denial of qualified immunity *de novo*.  *Wilkerson v. Seymour*, 736 F.3d 974, 977 (11th Cir. 2013).

# I. BACKGROUND

## A. *Factual Background*

This appeal concerns whether Villegas is entitled to qualified immunity on Buress's claim that Villegas failed to intervene in a false arrest.  We recount the facts as stated in Buress's first amended complaint, including the facts leading up to Villegas's participation in Buress's arrest, to put the relevant facts in context.  We consider only the alleged facts after Villegas arrived on the scene in deciding this appeal.

On December 9, 2017, Buress, a stand-up comedian and actor, was visiting Miami.  Buress was socializing and drinking with friends at a venue when his phone battery died.  Buress left the venue around 9:00 p.m. and began walking toward his hotel. While walking, Buress saw Officer Verne and requested that Verne call Buress an Uber in exchange for $20, but Verne refused the request.  After Verne declined Buress's request, Buress observed Verne, who was on duty and wearing his Miami Police Department uniform, interacting with and kissing young women who were leaving a club.  Buress told Officer Verne "you're over there kissing [women] but can't call me an Uber?"  Buress asserts he intended the statement as a joke.

Verne responded to Buress's joke by ordering Buress to leave the street.  Buress asserts he was at no point "aggressive, threatening, or behaving in a manner suggesting that he was a threat," but he nevertheless complied with Verne's orders and

entered a bar in search of a phone charger or another patron willing to call an Uber for him.  Verne followed Buress into the bar and ordered Buress to leave the bar, asserting Buress was too drunk to be on the premises.  Buress was confused and asked Verne, "if I can't be on the street, where do you want me to be?"  Verne responded by ordering Buress to leave the bar.

Buress complied and left the bar.  Once Buress and Verne were outside the bar, Verne turned on his body camera and ordered Buress to leave.  Buress walked away from Verne, but then stopped and turned around, saying into the body camera, "Hey it's me.  What's up?  This cop is stupid as fuck."  Buress was backing away from Verne while making the statement.  Verne instructed Buress to "get out of here," but then changed his mind.  Verne then ordered Buress to put his hands behind his back, grabbed Buress by the arms, and placed handcuffs on Buress.

While Buress was being detained, Buress asked Verne multiple times to explain what he was being charged with.  Verne suggested Buress was "resisting," but Buress claims at no time did he resist Verne's attempt to arrest him.  During this time, Buress encountered three fans and encouraged them to record the encounter.  The fans began recording and Verne told them to "get out of here."  Buress repeatedly asked Verne what his charges were, and Verne refused to answer, stating "you'll find out, I'm going to put it in writing."  Buress requested Verne read him his rights, and Verne responded, "I don't have to read you anything."  Verne then stated, "I told you about seven times to leave and you refused to

leave.  Learn how to leave."  Buress claims he was attempting to leave when he was detained.

The alleged facts relevant to this appeal begin here.  Officer Villegas arrived at the scene and joined Verne's interaction with Buress.  Buress asserts that when Villegas arrived, it was apparent Buress was not trespassing, threatening, or causing a disturbance. Villegas witnessed Buress's confusion and distress over the basis for his detention and Buress told Villegas, "I haven't done anything." Villegas looked in Verne's direction, but did not inquire as to the legitimacy of Buress's detention.

Villegas began to actively participate in Buress's detention. Buress asked Verne and Villegas if he was under arrest, and Verne replied, "Did I tell you you were under arrest?"  Villegas then put his hand on Buress's shoulder and said, "Let's go."  While Villegas began escorting Buress to the police car, Villegas appeared to turn on his body camera.[2]  Villegas and Verne escorted Buress to a nearby police car, each holding one of Buress's arms.  When they arrived at the police car, Villegas told Buress to lean up against the car.

Buress continued to ask the officers if he was being arrested and the basis for his arrest.  Villegas eventually replied, "You're being detained right now."  Verne asserted Buress was being detained

---

[2] The footage from the body camera was not before the district court when the motion to dismiss was decided, and we do not consider the footage in our disposition of this appeal.

for trespassing and disorderly intoxication, and Villegas repeated that Buress was being detained for disorderly intoxication. During the exchange, Verne pushed Buress against the police car and ripped his shirt.

As Villegas attempted to force Buress into the police car by pushing his chest, Buress stated in reference to Verne, "He's just salty that I roasted his ass." Villegas paused, then looked at Verne, who replied, "Yeah, I am." Buress asserts that with these words, Verne confirmed that his detention and arrest of Buress "was unlawful and retaliatory." Buress expressed to Villegas multiple times that the officers lacked probable cause. At no point did Villegas ask for further information from Verne about the legitimacy of the detention or arrest. Instead, Villegas continued to force Buress into the police car.

## B. Procedural Background

Buress filed his original complaint against the City of Miami, Verne, and Villegas on July 24, 2020. Villegas moved to dismiss the failure to intervene count against him, and the district court granted the motion to dismiss without prejudice.

Buress then filed his first amended complaint against the City of Miami, Verne, and Villegas. As to Villegas, he alleged failure to intervene, and Villegas moved to dismiss based on qualified immunity. The district court held a hearing, and orally denied Villegas's motion to dismiss for the following reasons:

> [The complaint] sufficiently pleads that Officer Ville-
> gas, who I have identified as officer number two, par-
> ticipated in and had knowledge of the alleged uncon-
> stitutional nature of the plaintiff's arrest.  That's in
> paragraphs 28 through 37.  He alleges that Officer Vil-
> legas arrived on the scene as Officer Verne was arrest-
> ing the plaintiff and participated in that arrest.
>
> He also alleges that he told Officer Villegas that the
> arrest was unjustified and that Officer Villegas wit-
> nesses Officer Verne acknowledge that he was only
> arresting Mr. Buress because Mr. Buress had roasted
> him.
>
> Now, of course, at this juncture I have to construe the
> facts as favorable to the plaintiff, and I find the plain-
> tiff has sufficiently pled that Officer Villegas had
> knowledge of the alleged unconstitutional nature of
> the arrest and participated in that arrest.  Therefore, I
> deny the motion to dismiss Count 3, and an order will
> enter.

Villegas filed a timely interlocutory appeal.

## II.  DISCUSSION

We review the denial of a motion to dismiss *de novo*. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).  Under such review, to determine whether the complaint sufficiently alleges a violation of a clearly established constitutional right, we are limited

to reviewing "the four corners of the complaint," must accept the alleged facts as true, and draw all reasonable inferences in favor of the plaintiff. *Id.*

"Under the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from suit unless the official's conduct violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Id.* (quotation marks and alterations omitted).

In *Jones v. Cannon*, we held that where an officer was present during an arrest and knew the arresting officer lacked reasonable basis for arguing probable cause, the non-arresting officer could be liable under § 1983 if he was sufficiently involved in the arrest. 174 F.3d 1271, 1283-84 (11th Cir. 1999). We later clarified that "a participant in an arrest, even if not the arresting officer, may be liable if he knew the arrest lacked any constitutional basis and yet participated in some way." *Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013). Thus, if an officer knows that an arrest is unconstitutional, but yet participates in the arrest, that officer may be liable. *See id.*

Applying this case law to the facts as alleged in the first amended complaint, the district court did not err in denying qualified immunity to Villegas. Drawing all reasonable inferences in Buress's favor, Buress has sufficiently alleged that Villegas knew there was no constitutional basis for the arrest and participated in it anyway. *See Keating*, 598 F.3d at 762. Specifically, when Buress

stated in reference to Verne that "[h]e's just salty that I roasted his ass," and Verne replied, "[y]eah, I am," that allegation could be read, in the light most favorable to Buress, that Villegas knew Verne was arresting Buress for a retaliatory purpose. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (noting that, generally, the First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech). This statement, combined with Buress's allegations that he told Villegas that he had not done anything and that the arrest lacked probable cause, as well as the fact that Villegas was not present to witness the beginning stages of the arrest, is sufficient to state a claim for failure to intervene. *See Wilkerson*, 736 F.3d at 980; *Jones*, 174 F.3d at 1283-84.

We note this case is different than *Wilkerson*, where we granted qualified immunity to an officer, Parker, who "lacked the requisite information to put him on notice that an unlawful arrest was occurring or had occurred." *Wilkerson*, 736 F.3d at 980. Parker arrived on the scene approximately three minutes after the arresting officer, Seymour, had completed the arrest and Wilkerson was already in the back of the patrol car. *Id.* at 977. At that time, Seymour gave Parker a detailed explanation for why he arrested Wilkerson. *Id.* In contrast, the complaint here alleges Villegas actively participated in the arrest once he arrived on the scene

following Buress's initial detainment by Verne.[3]   While Verne stated to Buress that he was being detained for trespassing and disorderly conduct, he gave no other facts to support the arrest. Verne then agreed that he was "just salty" that Buress "roasted" him.  At this stage of the proceedings, these allegations are enough to allege Villegas was aware there was no constitutional basis for the arrest but still participated.

While we agree with Villegas that the statement could also be read as an admission that Verne was upset at being "roasted" by Buress while simultaneously having a lawful reason to arrest him for disorderly intoxication, we must make all reasonable inferences in Buress's favor at the motion to dismiss stage.  We note there is body camera evidence that may clarify Villegas's actions.  Although Buress may or may not be able to establish at summary judgment or trial that Villegas was aware there was no constitutional basis for the arrest but still participated in it, we conclude that Buress has pleaded the minimum sufficient facts to survive a motion to dismiss as to Villegas.

AFFIRMED.

---

[3] We note there is a factual dispute regarding when Buress was considered "arrested" versus being "detained," but at this stage of the proceedings we accept the plaintiff's allegations.