# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 23, 2023

Lyle W. Cayce
Clerk

No. 21-60733

ROBIN MAYFIELD; OWEN MAYFIELD; WILLIAM MAYFIELD;
ESTATE OF MARK STEVENS MAYFIELD,

*Plaintiffs—Appellants,*

*versus*

BUTLER SNOW, L.L.P.; DONALD CLARK, JR.; CITY OF
MADISON, MISSISSIPPI; MARY HAWKINS-BUTLER, *Individually
and in her Official Capacity*; POLICE CHIEF GENE WALDROP,
*Individually and in his Official Capacity*; CHUCK HARRISON, *Individually
and in his Official Capacity*; VICKIE CURRIE, *Individually and in her
Official Capacity*; JOHN AND JANE DOES 1-10; RICHARD
WILBOURN, III,

*Defendants—Appellees,*

DALE DANKS, JR.; JANET DANKS; JORDAN RUSSELL; QUINTON
DICKERSON,

*Movants—Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:17-CV-514

_____

ON PETITION FOR REHEARING EN BANC

Before RICHMAN, *Chief Judge,* and HO and ENGELHARDT, *Circuit Judges.**

PER CURIAM:

The court having been polled at the request of one of its members, and a majority of the judges who are in regular active service and not disqualified not having voted in favor (FED. R. APP. P. 35 and 5TH CIR. R. 35), on the Court's own motion, rehearing en banc is DENIED.

In the en banc poll, three judges voted in favor of rehearing (Smith, Elrod, and Ho), and eleven voted against rehearing (Richman, Jones, Stewart, Haynes, Graves, Higginson, Willett, Duncan, Engelhardt, Oldham, and Douglas).

---

*Judges Southwick and Wilson did not participate in the consideration of the rehearing en banc.

James C. Ho, *Circuit Judge*, joined by Smith, *Circuit Judge*, dissenting from denial of rehearing en banc:

At first blush, Mark Mayfield, Priscilla Villarreal, and Sylvia Gonzalez don't appear to have a lot in common.

Mayfield was a Tea Party activist who supported a primary challenger to a U.S. Senator. *See Mayfield v. Butler Snow*, _ F.4th _, _ (5th Cir. 2023). Villarreal writes stories on Facebook "in profanity-laced Spanglish" criticizing local police and prosecutors in a sprawling border city. Simon Romero, *La Gordiloca: The Swearing Muckraker Upending Border Journalism*, N.Y. Times (Mar. 10, 2019). *See also Villarreal v. City of Laredo*, 44 F.4th 363, 368 (5th Cir. 2022), *vacated on reh'g en banc*, 52 F.4th 265 (5th Cir. 2022). Gonzalez is a retiree who wanted to give back to her small bedroom community by running for local office. *See Gonzalez v. Trevino*, 42 F.4th 487, 489 (5th Cir. 2022), *reh'g en banc den.*, 60 F.4th 906 (5th Cir. 2022).

If they'd ever met, they likely would've disagreed on countless issues.

But they share at least one thing in common: They all disagreed with those in power. And they all believe that they were punished for it—that they were charged, arrested, jailed, and humiliated for the crime of criticizing those in office. They all assert that it's wrong for officials to jail their opponents as an intimidation tactic. They all allege that that's exactly what happened to them. And they all ask this court for the opportunity to tell their stories to a jury and prove their case in a court of law.

The First Amendment doesn't mean much if you're only allowed to express views favored by the government. There's not much left to freedom of speech if you have to worry about being jailed for disagreeing with public officials. Indeed, it's hard to imagine anything more inimical to our Founding principles. *See*, *e.g.*, Laurence H. Silberman, *Hoover's Institution*, Wall St. J., July 20, 2005 ("[T]he most heinous act in which a democratic

3

government can engage is to use its law enforcement machinery for political ends."). "Nothing is more corrosive to public confidence in our criminal justice system than the perception that there are two different legal standards—one for the powerful, the popular, and the well-connected, and another for everyone else." *United States v. Taffaro*, 919 F.3d 947, 949 (5th Cir. 2019) (Ho, J., concurring in the judgment).

But I fear that that's what we're allowing. In case after case, citizens present compelling allegations that officials are abusing government power to reward allies and punish adversaries. And we stand by and let it happen.

So I'm concerned about the state of freedom of speech in our circuit. I'm heartened that a diverse amicus coalition of respected public interest groups have asked us to hold officials accountable in cases like these. *See Gonzalez*, 60 F.4th at 913 & n. 4 (Ho, J., dissenting from denial of rehearing en banc). These organizations no doubt disagree with one another on virtually every major issue under the sun. Yet they've joined forces to support the basic right of every American to criticize their government.

I regret that we remain unable to muster that same unity in these cases. I worry that, as a result, "citizens in our circuit are now vulnerable to public officials who choose to weaponize criminal statutes against citizens whose political views they disfavor." *Id.* at 911. I dissent from the denial of rehearing en banc.[1]

---

[1] To be clear, I have no quarrel with how my distinguished colleagues on the per curiam panel decided this case. After all, we were bound by circuit precedent. That's why I concurred in the judgment. _ F.4th at _ n.*. It's not just that we were bound by *Gonzalez* (which was issued prior to our decision but after briefing and oral argument in this case). We were also bound by our court's previous ruling in *this* case. *See Mayfield v. Currie*, 976 F.3d 482 (5th Cir. 2020). As the per curiam correctly observes:

> As this court has previously noted, Plaintiffs brought claims under multiple provisions of the Constitution, including but not limited to the

# I.

This case is not just the latest example of officials abusing our criminal justice system to punish political adversaries. It's also the most tragic.

Plaintiffs present serious allegations that Defendants abused the criminal justice system to destroy the livelihood and life of a citizen for opposing an incumbent U.S. Senator in a contested primary election—and that their misuse of government power drove him to suicide.

A group of political activists asked a local attorney, Mark Mayfield, to help them take a photograph of the Senator's wife. (They chose Mayfield because his mother lived in the same nursing home.)

Mayfield declined to take the photo. But he did tell them where in the nursing home the Senator's wife lived.

Perhaps he shouldn't have provided the information he was asked. But did he deserve to be arrested, prosecuted, and imprisoned? Did he deserve to be humiliated, even driven to suicide—and his family destroyed?

It's unfathomable that law enforcement officials would've devoted scarce police resources to pursuing Mayfield, but for one thing: The people in power disliked his political views.

---

First and Fourth Amendments. *See Mayfield*, 976 F.3d at 486 n.1. But this court concluded that "Plaintiff-Appellees' claims against Officer Currie . . . fall under the Fourth Amendment." *Id.* As that opinion explained, "*in order to bring a First Amendment claim for retaliatory arrest, a plaintiff generally must first show the absence of probable cause for the arrest*, i.e., a Fourth Amendment violation." *Id.* (citing *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019)).

_ F.4th at _ (emphasis added). In other words, our earlier decision in *Mayfield* foreclosed the theory adopted in *Gonzalez*—that a plaintiff could win even if there was probable cause. So Plaintiffs had no choice but to dispute the existence of probable cause in this appeal.

Substantial record evidence supports that common-sense inference. To begin with, a former prosecutor, Dow Yoder, testified that he personally witnessed a number of public officials—including the mayor, prosecutors, and police officers—boast about their efforts to persecute political opponents of the incumbent Senator, including Mayfield. He also reported these statements to public corruption investigators at the FBI.

For example, according to Yoder, a prosecutor told him that he "hate[s] those [activist] sons of bitches" and that "it kills [him] so bad to have to say there's no evidence of any felonies in th[e] case." The prosecutor added that "proving the crime . . . is not the point."

In addition, Yoder testified that the mayor told him that, "[i]f the DA's office is scared to . . . prosecute these [challenger's] supporters," she had other attorneys "just drooling, ready to get prosecuting."

There's more. Another former prosecutor admitted during his own deposition that he had contacted the mayor and informed her that he was "furious" about the incident and wanted to be appointed special prosecutor in the matter. And Defendants acknowledged that the statutes they considered didn't cover the activists' conduct.

## II.

These allegations should've been sufficient to state a First Amendment retaliation claim. Deploying the criminal justice system to target one's political opponents violates the First Amendment. And that is so even if the arrest was supported by probable cause. *See*, *e.g.*, *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1955 (2018) ("Lozman need not prove the absence of probable cause to maintain a claim of retaliatory arrest."); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019) (same).

After all, there are countless situations in which "officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves*, 139 S. Ct. at 1727. So there's a real "'risk that some police officers may exploit the arrest power as a means of suppressing speech.'" *Id.* (quoting *Lozman*, 138 S. Ct. at 1953–54). But just as we would never accept probable cause as a defense to a racially motivated prosecution, we shouldn't accept probable cause as a defense to a politically motivated one, either.

So this case should've gone to trial. Yet our court's precedents foreclose that result. In *Gonzalez*, we held that a plaintiff may not proceed on a First Amendment retaliation claim unless he presents objective "comparator" evidence that identifies other individuals who engaged in similar conduct yet were not arrested. *See* 42 F.4th at 492.

Our decision in *Gonzalez* significantly under-protects freedom of speech. Just look at this case: There's powerful testimony that public officials used the criminal justice system to punish the political opponents of an incumbent U.S. Senator. But they did so by using obscure theories of law that made it effectively impossible to assemble evidence of comparable scenarios. (Exactly how is Mayfield's family supposed to track down other scenarios where a citizen provided similar information to another person, but was *not* arrested—as *Gonzalez* requires?)

As a result, *Gonzalez* ties our hands and requires us to deny relief—no matter how obvious it is that these actions would never have been taken against a citizen who held views favored by those in power.

Like other forms of discrimination, political viewpoint discrimination can come in all sorts of shapes and sizes. It makes little sense to protect only certain people, depending on the particular size and shape of the abuse. In a country that claims to be free, *any* politically-motivated prosecution should be well out of bounds.

\* \* \*

Justice Scalia warned us about the dangers of unchecked prosecutorial power—especially for those who hold views disfavored by public officials.

As he put it, "the most dangerous power of the prosecutor" is "that he will pick people that he thinks he should get, rather than cases that need to be prosecuted." *Morrison v. Olson*, 487 U.S. 654, 728 (1988) (Scalia, J., dissenting) (quoting Robert Jackson, *The Federal Prosecutor*, Address Delivered at the Second Annual Conference of United States Attorneys, Apr. 1, 1940). And he further explained why the risk is so real:

> With the law books filled with a great assortment of crimes, a prosecutor stands a fair chance of finding at least a technical violation of some act on the part of almost anyone. In such a case, it is not a question of discovering the commission of a crime and then looking for the man who has committed it, it is a question of picking the man and then searching the law books, or putting investigators to work, to pin some offense on him. *It is in this realm—in which the prosecutor picks some person whom he dislikes or desires to embarrass, or selects some group of unpopular persons and then looks for an offense, that the greatest danger of abuse of prosecuting power lies. It is here that law enforcement becomes personal, and the real crime becomes that of being unpopular with the predominant or governing group, being attached to the wrong political views, or being personally obnoxious to or in the way of the prosecutor himself.*

*Id.* (quoting Attorney General Robert Jackson) (emphasis added).

I respectfully dissent from the denial of rehearing en banc.