In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1945

WILLIAM LUND,

*Plaintiff-Appellant*,

*v.*

CITY OF ROCKFORD, ILLINOIS,
a municipal corporation;
SEAN WELSH, TIMOTHY CAMPBELL, and
EDDIE TORRANCE,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:17-cv-50035 — **Frederick J. Kapala**, *Judge*.

ARGUED DECEMBER 9, 2019 — DECIDED APRIL 20, 2020

Before EASTERBROOK, ROVNER, and SCUDDER, *Circuit Judges*.

ROVNER, *Circuit Judge*. William Lund, a reporter, was arrested in Rockford, Illinois after discovering a police-run prostitution sting operation in the course of his news-gathering activities. He sued the City and several officers for

retaliatory arrest, malicious prosecution and several other alleged invasions of his rights under federal and state law. The district court granted summary judgment for the defendants. While Lund's case was pending, the Supreme Court issued its decision in *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019), which instructs that, in most cases, probable cause to arrest defeats a claim of retaliatory arrest. Because the police had probable cause to arrest Lund, *Nieves* controls, and we affirm the grant of summary judgment for the defendants.

## I.

Lund was a reporter and administrator for the Rockford Scanner, a news organization that reports on notable events in the Rockford Area.[1] On May 25, 2015, he heard, by way of a police scanner, of a number of traffic stops in the Midtown District of Rockford. Because he did not have a driver's license, he rode a motorized bicycle to the area, where he began taking photographs. He quickly surmised that the police were operating a prostitution sting operation. After about ten to fifteen minutes photographing the scene, he retreated to an alley.

In the meantime, a surveillance officer at the scene of the sting noticed Lund riding his motorized bicycle and taking photographs, and subsequently radioed the other members of the sting team to report it. One of the undercover officers

---

[1] The defendants label the Rockford Scanner an "internet blog" and note that Lund was an unpaid reporter with "no background or education in journalism." Brief of Appellees Sean Walsh, Timothy Campbell, and Eddie Torrance, at 4. We note that First Amendment protection does not depend on the quality of the news source or the wages of the reporter. The defendants' brief also contains many references to Lund's prior criminal record which are irrelevant to the matter presently before us.

posing as a prostitute also noticed Lund and called another officer, Officer Sean Welsh, on his cell phone and told him she was concerned about a man on a motorized bike who was taking pictures of her. Officer Welsh and Officer Timothy Campbell both knew of Lund and were familiar with some of his previous anti-police speech. Officer Welsh knew that Lund was a reporter for the Rockford Scanner.

Officers Campbell and Welsh found Lund in an alley and Campbell informed Lund that he had to "move on." Lund asked if he was breaking any laws, and Campbell informed him that he was not, but that if he did not leave as requested, his continued presence would constitute obstruction of a police detail and they would arrest him. Lund started the engine of his bicycle, and as he rode away, he called out to the undercover officers—loudly, over the noise of the engine— "goodbye officers." At that moment, Welsh and Campbell made the decision to arrest Lund for obstructing a police investigation. They had concerns that, because of his previous animus toward the Rockford police, he might post pictures on social media while the sting operation was still ongoing which, they assumed, would create a danger for the undercover officers who were unarmed in a high crime area. Welsh and Lund followed Lund for three blocks, the second of which Lund travelled southbound on a one-way-street which ran northbound. After one more block of following Lund, the officers stopped and then arrested him for driving the wrong way on a one-way street, operating a vehicle without insurance, resisting or obstructing a police officer, felony aggravated driving on a revoked license, and operating a motor vehicle without a valid drivers' license.

Under Illinois law, a motorized bicycle is considered a motor vehicle if it can propel a 170-pound person more than 20 miles per hour or more on a level surface. 625 ILCS §§ 5/1-140.15, 1-146. Conveniently, Lund weighs approximately 170 pounds, and the officers reported that they were following directly behind Lund, matching his speed at 24 miles per hour. In the district court, Lund had argued that his motor had been modified so that it could only reach a maximum speed of 20 miles per hour. The district court held that "no reasonable jury could conclude that defendants did not have a basis for believing, to a reasonable degree of certainty, that plaintiff's bicycle was travelling fast enough to violate § 11-708." R. 71 at 4. *See also* 625 ILCS § 5/11-708(b) ("Upon a roadway so designated for one-way traffic, a vehicle shall be driven only in the direction designated at all or such times as shall be indicated by official traffic control devices."). On appeal, Lund appears to have abandoned arguments about the bicycle's status as a motor vehicle under Illinois law.[2]

Following the arrest, Officer Eddie Torrance put together a list of all of the people who were arrested during the sting and gave it to his lieutenant. From there, someone else, who has not been identified, used the list to prepare a press release which became the source of news stories that listed Lund's name as an arrestee during a prostitution sting. Torrance

---

[2] In his statement of the case, Lund stated that he "rode a low-powered gasoline engine bicycle to the area," and that it could travel no faster than 19 to 20 miles per hour, thus "meeting the definition of a low-powered bicycle under Illinois law." Brief of Plaintiff-Appellant at 2. The argument section of his brief, however, does not challenge the district court's finding that "no reasonable jury could conclude that defendants did not have a basis for believing, to a reasonable degree of certainty, that plaintiff's bicycle was travelling fast enough to violate § 11-708(b)." R. 71 at 4.

testified that publishing this type of arrest information is a form of "public shaming" that the department uses to dissuade people from soliciting prostitution. (R. 63-4, Torrance Dep. 35).

The following year, Lund filed a motion to dismiss all of the charges for lack of probable cause. On the day that the court scheduled to hear the motion, the state's attorney entered a *nolle prosequi* order, dismissing all of the charges.

Lund sued the officers and the City of Rockford for false arrest, unreasonable search and seizure, failure to intervene, First Amendment retaliation, conspiracy, and malicious prosecution—all under §1983—and for malicious prosecution under Illinois law. Lund appeals only the entry of summary judgment for the defendants with respect to two claims: the federal First Amendment retaliation claim, and malicious prosecution under Illinois common law—decisions we review de novo.[3] *Youngman v. Peoria Cty.*, 947 F.3d 1037, 1041 (7th Cir. 2020).

---

[3] Although Lund sued the City of Rockford, the City did not file a brief in this case. This court issued a Rule to Show Cause, ordering the City to "show cause … why this appeal should not be submitted to the Court for decision without a brief and without oral argument by the appellee." App. R. 17. In response, the City stated that "[t]he Plaintiff-Appellant has no direct claims against the City. Plaintiff's claims against the City sound only in vicarious liability and indemnification." App. R. 19 at 1. In lieu of submitting its own brief, the City asked to join the briefs of the individual defendants. *Id.* at 2. This court denied that request as untimely. App. R. 20.

## II.

### A.    First Amendment retaliation

#### 1.  Retaliatory arrest and probable cause

Lund asserts that the district court errantly granted summary judgment on his First Amendment retaliation claim, arguing that he presented objective evidence that the defendant officers abused their power by suppressing and punishing Lund's speech. In other words, Lund claims that the officers arrested him in retaliation for speech and news-gathering activities protected by the First Amendment. Lund's concerns are not without basis. Nearly every authoring justice of the latest Supreme Court opinion on retaliatory arrest acknowledged "'a risk that some police officers may exploit the arrest power as a means of suppressing speech.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019) (quoting *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1953–54 (2018)). The majority opinion states:

> For example, at many intersections, jaywalking is endemic but rarely results in arrest. If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest.

*Id.* at 1727. *See also id.* at 1732 (Gorsuch, J. concurring in part and dissenting in part) ("No one doubts that officers regularly choose against making arrests, especially for minor crimes, even when they possess probable cause. So the presence of

probable cause does not necessarily negate the possibility that an arrest was caused by unlawful First Amendment retaliation."); *id.* at 1734 (Ginsburg, J. concurring in the judgment in part, and dissenting in part) ("Arrest authority, as several decisions indicate, can be abused to disrupt the exercise of First Amendment speech and press rights."); *id.* at 1736 (Sotomayor, J. dissenting) ("[S]ome arrests are demonstrably retaliation for protected speech, notwithstanding probable cause of some coincidental infraction."); *but see id.* at 1728 (Thomas, J. dissenting) ("I do not agree that 'a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so.'").

Even while expressing concerns about abuse of police power for retaliatory arrests, the *Nieves* Court answered the only question posed in this case: Does "probable cause to make an arrest defeat[] a claim that the arrest was in retaliation for speech protected by the First Amendment?" *Id.* at 1721. The answer, the Supreme Court held (just thirty-nine days after the district court entered its opinion in this case), is "yes." "The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Id.* at 1724. This answer definitively resolves the question presented by Lund in this case. At the time of Lund's arrest, the officers had probable cause to arrest him for, at a minimum, driving a motorized vehicle the wrong way on a one-way street. Lund does not challenge this finding. Therefore his claim for retaliatory arrest fails.

All of the other standards and tests that Lund describes and wishes to apply are inapplicable here, as the *Nieves* decision makes clear that (except in a very narrow exception that

we will discuss below, and which does not apply here), probable cause defeats a claim of retaliatory arrest. *Id.* at 1724. No further analysis of causation, motive, or injury is required. *Nieves* has left nothing further to discuss.

All of this presupposes, of course, that we can apply the holding of *Nieves* to a case that was still in the pipeline when the Supreme Court handed down the decision. The rule on retroactivity instructs that when the Supreme Court

> applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

*Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993). The Court in *Nieves* applied the rule to the parties before it (*see id.* at 1728), so the ordinary rules of retroactive application come into play, and we apply the holding of *Nieves* to the matter before us.

Lund, however, proposes that his case squeezes through the crack of an opening that *Nieves* left ajar. The Court described that opening as follows:

> Although probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so. In such cases, an unyielding requirement to show the absence of probable cause could pose

> "a risk that some police officers may exploit the arrest power as a means of suppressing speech."

*Nieves*, 139 S. Ct. at 1727 (quoting *Lozman*, 138 S. Ct. at 1953). As an example, the *Nieves* majority described a hypothetical in which a police officer uses a jaywalking arrest to retaliate against a rabble-rouser complaining about police conduct, when other jaywalkers are almost never subject to arrest. *Id.* at 1727. Lund asserts that his arrest for driving a vehicle the wrong way down a one-way street was, in fact, retaliation for his protected First Amendment journalistic activity. But to make this argument, Lund would have to present "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 1727. That language in *Nieves* implies that Lund would have to present objective evidence that the Rockford police rarely, if ever, arrest citizens who drive vehicles or, perhaps more specifically, motorized bicycles the wrong way down one-way streets. It is possible; however, *Nieves* has left open the possibility that Lund could demonstrate objective evidence of retaliation in some other way.

Lund urges us to take the view of the concurring and dissenting Justice Gorsuch and dissenting Justice Sotomayor and apply the majority's view of the exception "commonsensically." *See id.* at 1734 (Gorsuch, J. concurring in part and dissenting in part); *id.* at 1741 (Sotomayor, J. dissenting). In his separate opinion, Justice Gorsuch opined that the majority opinion did not adopt a rigid rule "that First Amendment retaliatory arrest plaintiffs who can't prove the absence of probable cause must produce 'comparison-based evidence' in every case." *Id.* at 1734 (Gorsuch, J. concurring in part and dissenting in part) (citing Sotomayor, J. *id.* at 1737).

> I do not understand the majority as going that
> far. The only citation the majority offers in sup-
> port of its new standard is *Armstrong*, which ex-
> pressly left open the possibility that other kinds
> of evidence, such as admissions, might be
> enough to allow a claim to proceed. Given that,
> I retain hope that lower courts will apply to-
> day's decision "commonsensically," *post*, at
> 1741–1742, and with sensitivity to the compet-
> ing arguments about whether and how *Arm-
> strong* might apply in the arrest setting.

*Id.* at 1734.

We agree with Justice Gorsuch's interpretation of the ma-
jority opinion in *Nieves*; the majority does not appear to be
adopting a rigid rule that requires, in all cases, a particular
form of comparison-based evidence. *Nieves* requires that a
plaintiff "present objective evidence that he was arrested
when otherwise similarly situated individuals not engaged in
the same sort of protected speech had not been." *Id.* at 1727.
We cannot, however, predict in advance every factual sce-
nario which might meet the Court's "objective evidence"
standard. We must consider each set of facts as it comes to us,
and in assessing whether the facts supply objective proof of
retaliatory treatment, we surmise that Justices Gorsuch and
Sotomayor are correct—common sense must prevail.

Regardless of how we interpret the requirements of *Nieves*,
however, Lund has not presented sufficient objective evi-
dence of retaliation that would allow him to slip into the nar-
row exception to the rule which dictates that probable cause
to arrest defeats a retaliatory arrest claim. Lund has made no
attempt to present objective evidence showing that the police

rarely make arrests for driving the wrong way on a one-way street, or that other similarly situated persons were not arrested, and he has not demonstrated retaliation in some other way.

The only evidence Lund offers is what he labels as an "admission" by Welsh and Campbell that they decided to arrest Lund for obstruction "based solely on his newsgathering activities," and because he said, "goodbye officers." *See* Brief of Plaintiff-Appellant at 4–5, 9. To support this claim, Lund cites to deposition testimony that purports to be an admission by Officers Welsh and Campbell that they arrested Lund "solely" for these activities. *Id.* at 9. But Lund has not presented the full picture of the relevant testimony. For example, he stops his citation to Officer Campbell's testimony too soon. The officers make clear that they initially made the decision to stop and possibly arrest Lund not *solely* because of his First Amendment activity, but because they had concluded that his First Amendment activity (news gathering activity and yelling "goodbye officers) was obstructing or was about to obstruct their law enforcement investigation. Lund cites only to the first two question-and-answer exchanges below in Officer Campbell's deposition, but had he cited to a longer excerpt, we would see that the officers did not decide to arrest Lund for saying "goodbye officers," but rather, under the totality of the circumstances, they believed at the time that Lund's speech compromised or obstructed a police investigation:

> Q. So the reason you guys decided to stop him after what we see in the video here is the statement he made "Goodbye, Officers," correct?
>
> A. Yes.

Q. Was there any other crimes that you noted prior to him—or strike that —from where we see here until he says "Goodbye, Officers"?

A. No.

Q. Is there any other legal justification that you base this stop on Mr. Lund other than him saying "Goodbye, Officers"?

A. I think you can take the whole totality of everything together towards the obstruction charge, yes.

Q. That being him taking the photos?

A. The photos and the videos compromising— potentially compromising the detail and the safety of the officers, yes.

Q. Do you know whether or not you can base probable cause on actions that aren't crimes?

A. It's called totality of the circumstances. You can take somebody's actions and things that they're doing and put it all together.

R. 63-5, Campbell dep. 65.

In fact, Officers Campbell and Welsh repeatedly described their initial decision to pursue Lund in order to arrest him as one based on Lund's compromising, obstructing, or impeding the investigatory detail, and out of concern for the safety of the undercover officers. *See* R. 63-5, Welsh dep. 74–75 ("there was concerns that he was interfering with our detail and our investigation."); *id.* 80–81 ("based on the fact we were concerned for the safety of the undercover officers. … [W]e grew

very concerned that he was at this time now impeding in the investigation. So Officer Campbell and I made the decision to go arrest Mr. Lund for obstructing an investigation."); *id.* at 82–83 ("And so based on those feelings and that concern that … he had the potential that he could post these pictures on social media, which put those two officers in jeopardy."); *id.* at 91–92 ("placed under arrest for … [o]bstructing a police investigation, interfering with a police investigation."); *id.* at 94–95 ("He hindered the investigation because we had to go and address what he was doing because of the concerns of the undercover officers. So we had to put the operation on hold to address his activities."); *id.* at 103–104 ("obstruction … was the initial reason why we went to go stop him."), *id.* at 131–132 ("Q: Oh, he was impeding? A: Yeah … [w]e had to take time out of our detail to come and address his activities and what he was doing. We had to stop what we were doing in order to address the concerns of the undercover officer onscene."), *id.* at 155 (" I was worried for the safety of the officers that were on the street corner posing as prostitutes."); R. 63-3, Campbell Dep. 35–37 (The officers asked Lund to leave "[t]o protect the integrity of the detail and the safety of the … undercover officers."); *id.* at 41 ("Everything put together, yes, I believe it did at that point constitute obstruction. … [A]t that point my opinion was that Mr. Lund was attempting to compromise our detail."); *id.* at 42–43 ("The safety of the officers I believe could have been brought into question. … I believe his actions were an attempt to obstruct what we were doing."); *id.* at 51–52 ("Due to [Lund's] circling the area on his motorized bike and him stopping several times to photograph and record the officers, we felt his activities were compromising to the success of our detail. … [H]is presence was interfering with our detail.").

We present these examples only to counter Lund's claim that the officers "admitted" that they arrested Lund solely for his First Amendment activity. They did not. We take no position as to whether Lund's behavior met the criteria for obstruction of justice, and we need not. The officers' reasonable belief that Lund's activities were obstructing, or might come to obstruct, their investigation was sufficient for them to stop Lund and ask him to move along. Although First Amendment activity is generally protected, it loses its protection when it violates the law. *See generally Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). And generally applicable laws, like those that prohibit interference with a police investigation, "do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991). It is possible, of course, that based on Lund's activities, a court might conclude that no reasonable officer could have construed his actions as constituting obstruction of justice. After all, reporters are free to take photos and videos of what they see on a public street, even when it involves police activity. *See* 720 ILCS § 5/14-2(e). *See also Am. Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 608 (7th Cir. 2012). Again, however, we note that we need not delve into this question. The officers had a clear right to stop Lund, question him, and direct him to cease doing anything that placed their undercover investigation in jeopardy.

We need not address the question of whether the officers had probable cause to arrest Lund for obstruction of justice, because whatever the officers reasonably believed about Lund's activities, and whether those activities in fact constituted obstruction of justice, did not matter in the end. Lund was not arrested until after his clear violation of an Illinois

vehicular law—driving against the traffic pattern on a one-way street. *See* 625 ILCS § 5/11-708. And Lund has not argued in this court that the officers did not have probable cause to arrest him for that offense.

Lund has not supplied any "objective evidence" that "similarly situated individuals not engaged in the same sort of protected speech" have not been and would not be arrested for driving the wrong way down a one-way street. *Nieves*, 139 S. Ct. at 1727. Although we might all agree that jaywalking—the example given in *Nieves*—is the type of law-breaking toward which most officers would turn a blind eye, it is less clear that officers routinely give a pass to persons driving motorized vehicles the wrong way on one-way streets, an action that could have fatal consequences. And although Lund, in his brief, describes his behavior as riding or driving a "bicycle," Illinois law makes a distinction between low-powered bicycles and motorized vehicles (625 ILCS §§ 5/1-140.15, 1-146), and Lund has not challenged the district court's finding that the officers had a reasonable basis for believing, to a reasonable degree of certainty that Lund was operating a motorized vehicle under Illinois law. R. 71 at 4. Lund has presented no evidence that this behavior would ordinarily get a pass from police officers, and common sense does not supply an obvious answer.

In sum, it is clear that the officers had probable cause to arrest Lund for violating an Illinois traffic law. Probable cause defeats a retaliatory arrest claim in all but the most narrow of exceptions. *Nieves*, 139 S. Ct. at 1727. Lund has offered no evidence that his actions or arrest fall within that narrow exception.

2.  Qualified Immunity

As we have noted, the rule of *Nieves* applies retroactively—if a plaintiff cannot plead and prove the absence of probable cause, the retaliatory arrest claim fails. *Id.* at 1725. But even if *Nieves* did not apply retroactively, Lund still could not prevail, as the defendant officers were entitled to qualified immunity.

Police officers are entitled to qualified immunity under section 1983 unless they "violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards,* 566 U.S. 658, 664 (2012). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011)).

Three years before Lund's arrest, the Supreme Court was asked to decide two questions: "whether a First Amendment retaliatory arrest claim may lie despite the presence of probable cause to support the arrest," and second, "whether clearly established law at the time of [the plaintiff's] arrest so held." *Reichle*, 566 U.S. at 663. The Court passed on the first question, (but, as we just noted, answered it seven years later in *Nieves*, as we described above). The Court, in 2012, did, however, decide the second question and determined that at the time of the defendant's arrest in *Reichle,* "it was not clearly established that an arrest supported by probable cause could violate the First Amendment." *Id.* at 663. *See also Thayer v. Chiczewski*, 705 F.3d 237, 253 (7th Cir. 2012) (granting qualified immunity to the arresting officer because "neither our circuit nor the Supreme Court has "'recognized a First Amendment

right to be free from a retaliatory arrest that is supported by probable cause.'") (quoting *Reichle*, 566 U.S. at 664–65).

At the time of Lund's arrest, therefore, the Supreme Court had specifically stated that it had "never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause." *Id.* at 664. This forecloses an argument that any reasonable officer would have understood that the First Amendment precluded Lund's arrest. In short, no matter whether we apply the substantive holding of *Nieves* or look at the qualified immunity question presented in *Reichle*, Lund cannot prevail. None of Lund's other arguments—including Lund's arguments about the publication of his name, the officers' subjective intent, and causation, among others—therefore, are relevant.

## B.    Malicious prosecution

Under Illinois law, to succeed on a malicious prosecution claim, a plaintiff must prove: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (1996). Only the second of these requirements is at issue here.

Approximately eight months after Lund's arrest, his attorney filed a motion to dismiss all charges. That same day, the state's attorney filed a motion to dismiss all of those same charges. In response, the court entered a bare *nolle prosequi* order which simply stated, "cases dismissed on motion of state's attorney." R. 54-6. Under Illinois law a *nolle prosequi* (meaning "refuse to pursue") does not dispose of a case on its

merits, but merely "reverts the matter to the same condition which existed before the commencement of the prosecution." *Swick*, 662 N.E.2d at 1242 (quoting *People v. Woolsey*, 564 N.E.2d 764, 766 (Ill. 1990)). For purposes of a malicious prosecution action, the plaintiff has the burden to prove that the *nolle prosequi* was entered for reasons related to his innocence. *Id.* at 1243. "The circumstances surrounding the abandonment of the criminal proceedings must *compel* an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." *Id.* (emphasis ours). A bare *nolle prosequi* order, which does not state the reasons behind it, is insufficient to establish that the proceedings were terminated in the plaintiff's favor. *Id.*

Despite the bare order, Lund argues that the timing and circumstances surrounding the entry of a *nolle prosequi* order support a finding that the charges were dismissed because the government lacked "reasonable cause to proceed." Brief of Plaintiff-Appellant at 18–19. Lund points to the fact that the state's attorney moved to enter a *nolle prosequi* order on the same day that Lund's criminal defense attorney noticed his motion to dismiss all of the charges. There are many reasons why a state's attorney might choose not to prosecute a case including, among others, decisions about how to expend limited resources, availability of police and other witnesses, and ease of garnering evidence. Illinois law makes clear that the burden is on the plaintiff to prove a favorable termination, and a coincidence in timing on top of a bare use of the *nolle prosequi* order does not constitute the sort of proof which might compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution. Lund has not met his burden to demonstrate that the *nolle prosequi* order

in this case was a termination favorable to him, and therefore his malicious prosecution claim fails.

### III.

Because Lund cannot mount either a retaliatory arrest or malicious prosecution claim, we AFFIRM the district court's entry of summary judgment for all defendants.