In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 21-2541

SHANE E. LYBERGER, *et al.*,

*Plaintiffs-Appellants*,

*v.*

SCOTT SNIDER, *et al.*,

*Defendants-Appellees*.

———————

Appeal from the United States District Court for the
Southern District of Illinois.
No. 19-cv-369-SPM — **Stephen P. McGlynn**, *Judge*.

———————

ARGUED FEBRUARY 15, 2022 — DECIDED AUGUST 2, 2022

———————

Before WOOD, HAMILTON, and BRENNAN, *Circuit Judges*.

WOOD, *Circuit Judge*. One night, plaintiffs Shane Lyberger, his brother Andrew Lyberger, and Robert Dailey spotted a woman who they believed was committing a traffic offense. The men took it upon themselves to follow her to her family's home and confront her; they refused to leave her family's property when asked to do so. After the woman called the police, the night ended with all three plaintiffs in handcuffs. In

the end, however, the District Attorney's office declined to pursue criminal charges.

The Lyberger brothers and Dailey were not mollified by that outcome. All three brought this action under 42 U.S.C. § 1983 against the arresting officers: Scott Snider, Andrew Harvard, and Jamie James. The plaintiffs allege that the officers unlawfully stopped, searched, and arrested them in violation of their First and Fourth Amendment rights. Because for Fourth Amendment purposes the officers had reasonable suspicion for the initial stop and probable cause to arrest, and the First Amendment adds nothing of importance to the analysis, we affirm the district court's grant of summary judgment to the defendants on all counts.

**I**

As we must in an appeal from a grant of summary judgment, we recount the disputed facts in the light most favorable to the non-moving parties (in this case, the plaintiffs). See *Kemp v. Fulton County*, 27 F.4th 491, 492 (7th Cir. 2022).

On April 2, 2017, the two Lybergers and Dailey decided to spend their evening observing police activity in order to produce content for their YouTube channel, "Southern Illinois Observers." (To avoid confusion, we refer to the Lybergers by their first names when necessary, and we likewise refer to Lisa and Eric Thompson by their first names.) While driving around Centralia, Illinois, in Shane's car, the three observed Lisa Thompson driving while holding an infant in her lap. The plaintiffs thought that Lisa was also holding a cellphone and decided to follow her home. They tailed her down a one-way road that led to her mother-in-law's home. When Lisa parked, Dailey got out of Shane's car, began recording a

video, walked onto the driveway, and confronted Lisa while she sat in her stationary vehicle. Dailey's video shows him on the Thompson family's driveway while he and Lisa argued. About a minute later, Lisa's husband Eric Thompson walked out of the house, took the child inside, and repeatedly told the plaintiffs to get off the family's property. Dailey refused to leave, prompting Lisa to warn him that she was calling the police. She then called 911 and informed the police that a man had followed her to her home and that she "told him to get off my property and he's still there recording me."

The plaintiffs decided to wait in their car until the police arrived. The car was parked to the side of the Thompsons' driveway. Dailey kept recording while they waited. The tape shows the plaintiffs discussing whether they were on a private road; one of the Lyberger brothers can be heard worrying that Dailey was clearly on the Thompsons' private driveway.

The first person to respond to Lisa's 911 call was Officer Scott Snider, from the Wamac (Illinois) police force. When he arrived, Snider walked to the plaintiffs' car and asked for their identification documents. The plaintiffs refused to comply; they insisted they had done nothing wrong and began asking if they were suspected of committing a crime. Snider called for backup, began arguing with the plaintiffs about what occurred, asked three more times for their IDs, and told them that he was investigating a call about a suspicious person. The plaintiffs persisted in their refusal to provide their IDs. They repeatedly asked if they were free to go. Essentially the answer was no: Snider informed them that he was detaining them as part of his investigation.

Centralia Police Officers Andrew Harvard and Jamie James showed up next. Snider and James interviewed Lisa

and then returned to the plaintiffs' car. The officers explained that Lisa told them that the plaintiffs had followed her home, that they had videotaped her, and that she feared they had taken photos of her as she breastfed her child. (The plaintiffs deny taking pictures or video of Lisa breastfeeding, and there are no such images in the record.) The police officers continued to demand the plaintiffs' IDs, warning that the plaintiffs would be arrested for disorderly conduct and obstruction of justice if they refused. The plaintiffs were unmoved, insisting that not showing their ID cards was not a crime. Ultimately the police arrested all three for disorderly conduct and obstruction. In connection with the arrests, the officers searched and inventoried Shane's car and confiscated the video camera.

A *nolle prosequi* order was entered in the plaintiffs' criminal cases, but that did not end the matter. The plaintiffs followed up with this section 1983 action against Snider, Harvard, and Dailey, arguing that the officers subjected them to unlawful detentions, unlawful arrests, unconstitutional searches and seizures, and retaliation for speech protected by the First Amendment. As we noted, the district court entered judgment in the defendants' favor on all counts.

## II. Fourth Amendment

Our review of the district court's judgment is *de novo*, meaning that we take a fresh look at the record to see if there are any material questions of disputed fact and if the district court correctly concluded that the defendants were entitled to judgment as a matter of law. See *Janus v. AFSCME, Council 31*, 942 F.3d 352, 359 (7th Cir. 2019).

A

We begin with the plaintiffs' challenge to the initial stop. When a police officer makes an investigatory stop, she "must be able to point to specific facts that give rise to a reasonable suspicion that the person stopped is involved in criminal activity." *Jones v. Clark*, 630 F.3d 677, 682–83 (7th Cir. 2011) (citing *Terry v. Ohio*, 391 U.S. 1, 30 (1968)). The stop must be "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *Hiibel v. Sixth Jud. Dist. Ct. of Nev.*, 542 U.S. 177, 186 (2004) (quotations omitted).

Officer Snider had the reasonable suspicion needed to justify the initial detention. Snider was responding to a 911 call from Lisa, who said that several strange men had followed her to her mother-in-law's home, accosted her, trespassed on the family's land, and taken photos of her exposed breast. When Snider arrived, he was immediately able to corroborate much of Lisa's account: the plaintiffs were parked outside the family's home; Lisa pointed Snider to Shane's car, telling him that the plaintiffs were the people she had called about; and the plaintiffs admitted to following Lisa home and confronting her. These specific facts were enough to give rise to a reasonable suspicion that the plaintiffs had committed a crime.

B

The plaintiffs next argue that they should never have been arrested. Probable cause is an absolute defense to a section 1983 claim for wrongful arrest. See *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009). "Whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." *Michigan v. DeFillippo*, 443 U.S. 31, 36

(1979). Thus, wrongful-arrest suits under section 1983 can proceed only if, at the time of an arrest, an arresting officer did not have probable cause to believe that the person being arrested committed a crime under Illinois law. See *Williams v. Jaglowski*, 269 F.3d 778, 782 (7th Cir. 2001).

The plaintiffs contend that the simple act of refusing to provide identification to a police officer is not probable cause for obstruction under Illinois law. In *Williams v. Jaglowski*, we surveyed state law and concluded that "mere silence in the face of requests for identifying information … is not enough to constitute obstruction" in Illinois. 269 F.3d at 782 (citing *People v. Weathington*, 76 Ill. App. 3d 173, 176 (1979) (internal quotation marks omitted). To reach that conclusion, we looked to Illinois's obstruction statute, which reads: "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer … of any authorized act within his official capacity commits a Class A misdemeanor." 720 ILCS § 5/31–1(a). The Illinois Supreme Court interprets the law to "proscribe only some physical act" impeding an officer, "such as going limp, forcefully resisting arrest, or physically aiding a third party to avoid arrest." *People v. Raby*, 40 Ill. 2d 392, 399 (1968). By contrast, the law does not criminalize "mere argument with a policeman about the validity of … police action[.]" *Id.* Following *Raby*, the Illinois Appellate Court has expressly and repeatedly held "that one cannot be convicted of obstruction merely for refusing to identify oneself." *People v. Fernandez*, 2011 IL App (2d) 100473, ¶ 8. (We set to one side the possibility that the police are free to ask a car's driver to furnish his license, registration, and insurance information, as neither party relies on such a rule, and its applicability to a parked car is unclear.) Thus, even though Dailey and the Lyberger brothers were belligerent and

uncooperative, we accept for present purposes that their re-
fusal to provide ID did not provide probable cause to arrest
them for obstruction.

The defendants object that *Jaglowski* was effectively over-
turned by *Hiibel v. Sixth Judicial District Court of Nevada*, 542
U.S. 177, 186–88 (2004), which held that a Nevada stop-and-
identify law was permissible under the Fourth Amendment.
Two years after the Supreme Court issued that decision, we
noted in passing that *Hiibel* created new uncertainty about
whether Illinois law made refusing to identify oneself
grounds for arrest. See *Cady v. Sheahan*, 467 F.3d 1057, 1063 n.8
(7th Cir. 2006). *Cady* also speculated that ILCS § 5/107–14, an
Illinois criminal-procedure rule that regulates police conduct
during a stop, conceivably could bring refusing to identify
oneself to the police under the obstruction statute. *Id.* Neither
suggestion, however, was essential to the outcome in *Cady*.

But we should not overread *Hiibel*. It held only that a state
*may* pass a law that makes refusing to provide identification
to the police a crime. See *Hiibel*, 542 U.S. at 186–88. Whether
or not the Illinois legislature *has* done so is another question
entirely, and one that rests on state law. Since *Hiibel* and *Cady*,
the Illinois Appellate Court has reaffirmed that its answer to
that question is no: refusing to identify oneself to the police
does not constitute obstruction of justice. See *Fernandez*, 2011
IL App (2d) 100473, ¶¶ 8, 12 (holding that *Hiibel* does not
change the Illinois Appellate Court's interpretation of the
state obstruction statute); see also *People v. Hilgenberg*, 223 Ill.
App. 3d 286, 288–89 (1991) (holding that "[m]ere refusal to an-
swer a police officer … is not a violation of the statute"). The
state courts have likewise held that section 5/107–14, the crim-
inal procedure rule mentioned in *Cady*, does not create a

"duty … for a suspect to identify himself or herself." *Fernandez*, 2011 IL App (2d) 100473, ¶ 11. We consider the uncertainty we noted in *Cady* resolved and therefore note that the depiction of state law in footnote eight of that decision is not accurate. See *Cady*, 467 F.3d at 1063 n.8.

C

But that is not the end of the inquiry. The police defendants are not liable under section 1983 so long as they had probable cause to arrest the plaintiffs for *any* predicate offense, regardless of the officers' subjective reason for making the arrest. See *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Here, the defendants had probable cause to arrest all three of the plaintiffs for criminal trespass.

In Illinois, a person commits trespass to real property when that person "remains upon the land of another, after receiving notice from the owner or occupant to depart[.]" 720 ILCS § 5/21–3(a). Both sides agree that Dailey followed Lisa onto her family's property in order to confront her, that Lisa told police dispatchers that a strange man was on her property and refusing to leave, and that she identified the occupants of the car as the people who followed and accosted her. Generally, "an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause." *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000). A reasonable person in the officers' shoes would believe there was "a substantial chance" that the three plaintiffs had trespassed on her land or, at least, were criminally liable for aiding and abetting the trespass. See 720 ILCS § 5/5–2(c) (making a person "legally accountable for the conduct of another" when they aid, abet, or attempt to aid another person's offense). Thus, Lisa's statements gave the police defendants

probable cause to arrest the three plaintiffs for criminal trespass, and that bars liability for wrongful arrest.

The plaintiffs also challenge the officers' search of the vehicle and seizure of the video camera, but they concede that the search and inventory seizure are lawful if the arrest stands. See *United States v. Cartwright*, 630 F.3d 610, 613–14 (7th Cir. 2010) (explaining the circumstances under which an inventory search is lawful under the Fourth Amendment). This claim is thus likewise foreclosed.

### III. First Amendment

Finally, the plaintiffs argue that the police defendants violated their First Amendment rights by arresting them in retaliation for refusing to provide their ID cards on demand. This argument has two fatal flaws: first (again), the officers had probable cause to arrest; and second, the plaintiffs did not have a First Amendment right to withhold their IDs.

In *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019), the Supreme Court held that probable cause typically defeats a claim for retaliatory arrest. Although *Nieves* was decided after the April 2017 stop that led to this case, *Nieves* applies retroactively to cases that were "still in the pipeline" when it was decided. *Lund v. City of Rockford*, 956 F.3d 938, 944 (7th Cir. 2020). That describes this case. And as we said above, the officers had probable cause to arrest the plaintiffs for trespass; that comes close to ending the inquiry. *Id.*

But the *Nieves* rule has at least one important exception, which recognizes that police often "have probable cause to make arrests" for a wide range of minor offenses "but typically exercise their discretion not to do so." *Nieves*, 139 S. Ct. at 1727. A plaintiff who cannot plead and prove an absence of

probable cause can still succeed if he shows objective evidence that he was "arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* For example, the *Nieves* majority wrote that if a plaintiff critical of police brutality is arrested for jaywalking, that plaintiff might prevail on a retaliatory arrest claim by showing that "jaywalking is endemic but rarely results in arrest." *Id.* Likewise, a plaintiff might prevail by pointing to similarly-situated comparators, statements from arresting officers or other police officials, or a wide range of other "objective evidence" of retaliation. See *Lund*, 956 F.3d at 945 (citing *Nieves*, 139 S. Ct. at 1727). But the plaintiffs in our case did not advance any such arguments, either here or in the district court. Without evidence to the contrary, we have no reason to believe that Centralia and Wamac's police officers would routinely give a pass to someone who followed a stranger home and refused to leave her property.

Moreover, the plaintiffs allege that they were retaliated against for refusing to produce ID—but the act of withholding ID is not protected by the First Amendment. See *Hiibel*, 542 U.S. at 182, 185 (holding that the Constitution does not prevent states from requiring people to produce identification during a *Terry* stop). As we said above, refusing to identify oneself to a police officer generally is not grounds for arrest under Illinois state law. See *DeFillippo*, 443 U.S. at 36 (1979). But many actions that are not prohibited by state law are not protected by a federal right that can be vindicated under section 1983. See *Maine v. Thiboutot*, 448 U.S. 1, 4–5 (1980) (discussing the scope of section 1983 actions). Because the plaintiffs were not engaged in constitutionally protected speech, they cannot prevail on their First Amendment retaliation claim. See *George v. Walker*, 535 F.3d 535, 538 (7th Cir. 2008).

**IV**

The plaintiffs cannot prevail on the merits for any of their claims, and so we need not reach the defendants' arguments about qualified immunity. Because the police officers had reasonable suspicion to detain Dailey and the Lyberger brothers and probable cause to arrest all three plaintiffs, we AFFIRM the order of the district court granting summary judgment to the defendants.