**Thomas Mark PROSE, Plaintiff–Appellant,**

v.

**W. Edward WENDOVER; Sally Repeck; Mike A. Carne; Edward Ochal; Robert L. Scoggins; Don Dismuke; Joe Koch; Steve Walters; and the City of Plymouth, Michigan, Defendants–Appellees.**

No. 02–1950.

United States Court of Appeals, Sixth Circuit.

April 27, 2004.

Juan A. Mateo, Detroit, MI, for Plaintiff–Appellant.

Sally Repeck, Columbia, MO, pro se.

Mike A. Carne, Plymouth, MI, pro se.

G. Gus Morris, Cox, Hodgman & Giarmarco, Troy, MI, for Defendants–Appellees.

Before NORRIS and COLE, Circuit Judges; and ECONOMUS, District Judge.[*]

## OPINION

ALAN E. NORRIS, Circuit Judge.

Plaintiff Thomas Mark Prose appeals from the district court's grant of summary judgment in favor of all defendants and its denial of Prose's motion for partial summary judgment. Prose brought suit under 42 U.S.C. § 1983 alleging that the defendants violated and conspired to violate his rights under the First, Fourth and Fourteenth Amendments of the United States Constitution.[1] Because we conclude that Prose did not raise any genuine issues of material fact to support his allegations, we affirm the judgment of the district court.

## I.

Prose's allegations are premised upon the actions of the defendants in connection with three incidents.[2] Viewing the evidence in the light most favorable to Prose, we recount the manner in which these incidents transpired.

### 1. The 1996 Incident

On September 16, 1996, David Dameron, a painter hired by defendant Wendover, parked his "cherry-picker" truck on an easement owned by Wendover that was located on Prose's property. Dameron got into the cherry-picker's bucket, raised the bucket to the proper height and began painting the exterior of Wendover's building. Prose demanded that Dameron move the cherry-picker. Prose then shut off the cherry-picker's engine, causing Dameron to jump out of the bucket to safety.

The first police officer who arrived on the scene was Officer Curtis Hill. Defendant Lieutenant Edward Ochal, who arrived later to supervise, testified at deposition that Prose was not asked why he turned off the cherry-picker. Hill testified at deposition that he had witnessed a heated verbal disagreement between Prose and Dameron when he arrived on the scene, that Dameron did not complain of injury or demand that charges be brought against Prose, and that Prose was issued a ticket for disorderly conduct only when Ochal became upset at Prose when he asked to leave the scene to go to his office, where-

---

[*] The Honorable Peter C. Economus, United States District Judge for the Northern District of Ohio, sitting by designation.

[1] Of the individual defendants, W. Edward Wendover, Sally Repeck and Mike A. Carne are private citizens. Edward Ochal and Robert L. Scoggins are Plymouth, Michigan, police officials, and Don Dismuke, Joe Koch and Steve Walters are former municipal officials.

[2] We note that Prose also presents evidence tending to show that the defendants acted in concert at various times and evidence demonstrating that some defendants showed hostility to Prose. Because we have decided Prose's claims without analyzing the individual defendants' cooperation with each other or their motives, we need not recount this evidence in detail.

upon Ochal detained Prose in the back of a police car. Plymouth City Attorney Donald Morgan declined to charged Prose with violating a city ordinance. On September 27, 1996, Ochal amended the charge against Prose to include "molesting and disturbing [a] person in pursuit of his occupation, vocation, or avocation," for which Wayne County prosecutor Patrick Muscat declined to prosecute Prose, citing insufficient evidence.

### 2. The 1998 Incident

On November 3, 1998. Prose visited Wendover's building after he had been awarded the right to inspect Wendover's business records under a court order. Wendover was the owner of a local newspaper. Because the newspaper's manager, defendant Mike A. Carne, had refused to speak with Prose earlier that morning over the telephone. Prose walked over to the lobby of the newspaper's offices to hand out copies of the court order. When Prose arrived. Carne telephoned Wendover. Wendover told Carne to call the police. Carne testified at deposition that he did not hear Prose use profanity, and that Prose left the building when asked to do so.

Officers Richard Webster and Robert Kamisky arrived on the scene after Prose had left. According to their report, they stayed for six minutes and determined that "[n]o further action [was] necessary." The report contains no reference to any criminal conduct by Prose. Defendant Ochal testified at deposition that he provided Wendover with a pile of blank witness statement forms to distribute to his employees.

On November 5, 1998, defendant Robert L. Scoggins, the Chief of Police, ordered Officer Webster to cite Prose with three violations: disorderly conduct involving telephone harassment, harassment, and the use of profanity in front of women and children, all arising from Prose's actions on November 3. Webster refused to follow Scoggins' order because he lacked personal knowledge to support the citation. Scoggins had Wendover sign the citation ticket although Wendover was not present in the newspaper's lobby at the time of the incident.

At some time after November 5, witness statements from newspaper employees were returned to the police. None of the statements backed by personal knowledge supported the charge that Prose used profanity in the lobby on November 3. Nor was there any evidence of telephone harassment on that date. On August 4, 1999, a court dismissed the charges against Prose for procedural insufficiency.

### 3. The 1999 Incident

Shortly after August 4, 1999, Prose met with city officials and told them that he contemplated bringing a civil action against the City. That same month, Scoggins and Ochal met with City Attorney John Martin about curing the legal defect in the newspaper lobby incident case. Martin testified at deposition that he told Scoggins and Ochal that the charges were weak, that the factual details upon which they were based were unsubstantiated, that the profanity charge may have been premised upon an unconstitutional ordinance, and that re-issuing charges at that time might be seen as retaliation for Prose's threat to sue. Scoggins thereafter ordered Ochal to write a new report concerning the lobby incident and present it to Wayne County prosecutor Ray Walsh.

On September 16, 1999, the defendants were served with notice that Prose had filed the present action. Later that day. Ochal met with Walsh and provided him with the report he had written regarding the lobby incident. After the meeting.

Walsh authorized a stalking complaint and warrant against Prose for allegedly stalking defendants Wendover and Repeck between November 3, 1998, and September 16, 1999.

The following day, Ochal, Wendover and Repeck appeared before Magistrate Theodore Johnson in Plymouth district court on the stalking charges. No record of that hearing can be located. However, Wendover and Repeck testified at deposition that Prose had engaged in several acts against them after the lobby incident that could have been perceived as stalking. The Magistrate approved the charges. On July 25, 2000, the stalking charges against Prose were dismissed because the judge concluded that the stalking statute was unconstitutional as applied to Prose.

## II.

Prose commenced this lawsuit in federal district court on September 16, 1999. The district court summarized the four-count allegation as follows:

In his Second Amended Complaint. Prose has alleged four causes of action. Count I. entitled "Conspiracy to Violate Federal Law Pursuant to 42 U.S.C. § 1983," claims that the defendants "aided and abetted each other in fabricating the evidence against Dr. Prose," ... conspired to violate his rights to be free from illegal searches and seizures and unlawful arrest and to be allowed due process and to engage in protected speech under the First Amendment." Second Am. Comp. pp. 9–10.

Count II, entitled "Substantive Violation of 42 U.S.C. § 1983," claims that defendants violated Prose's constitutional rights to be free from illegal search and seizure and unlawful arrest and to be allowed due process and to engage in protected speech. Second Am. Comp. at pp. 11–12.

Count III, entitled "Municipal Liability under Federal Law 42 U.S.C. § 1983," claims that the City of Plymouth has been deliberately indifferent to his rights "by sanctioning the underlying criminal charges ... without complying with the Michigan Code of Criminal Procedure." Plaintiff claims that the municipality attempted to enforce an unconstitutional ordinance–the use of profane language in front of women and children. In addition. Plaintiff claims the City has been deliberately indifferent by attempting to enforce the two other ordinances in the way they were used against him. Plaintiff claims the City has failed to train its police officers to comply with the Michigan Code of Criminal Procedure because the officers have testified that individuals can be charged for crimes by other citizens without an independent review by the local prosecutor before having the matter sworn to and arraigned in the local district court. This count also alleges a claim for retaliation against the City for seeking a two-count stalking complaint against Prose the day after he filed this lawsuit. Second Am. Comp. at pp. 12–14.

Count IV, entitled "Respondeat Superior/Active Participation," claims that the City, through defendants Dismuke. Koch, Walters and the Board of Commissioners, is vicariously liable for the conduct of defendants Ochal and Scoggins under the doctrine of *respondeat superior*. For each of the above claims, Plaintiff seeks "in excess of One Hundred Million Dollars." Second Am. Comp. at pp. 14–15.

On appeal, Prose has conceded that his claims under Count IV fail to state a cause of action.

On February 28, 2002, in an opinion that ably sorted out the many issues involved in this contentious litigation, the district

court granted summary judgment in favor of all defendants. The court ruled that the police had probable cause to issue tickets on each of the three occasions about which Prose complained. Specifically, the court determined that the police had probable cause to issue a ticket against Prose in 1996 because Dameron, the painter, "had specifically asked that charges be brought [against] Prose for turning off the truck and endangering Dameron's welfare[.]" Probable cause existed for the citation in 1998 because newspaper employees Michael Carne and Linda Szyniszewski "later explained to police what Prose had done and said in the office, and it was on the basis of their eye witness testimony that officers issued Prose a ticket." Probable cause existed for the 1999 charges because "an impartial witness[, Magistrate Johnson,] found probable cause to arrest for the stalking charge."

The district court held that where the police had probable cause to support their actions, their motives were irrelevant. Because it found that the officers committed no constitutional violations, the court determined that the City could not be held liable under 42 U.S.C. § 1983. It also found that because the police committed no constitutional violations, there was no evidence of a conspiracy to violate Prose's constitutional rights. Finally, the court determined that even if ticketing Prose for violating the profanity ordinance violated the First Amendment, the officers charging him with the violation were entitled to qualified immunity because the ordinance was presumptively valid.

The court also denied Prose's motion for partial summary judgment on the issue of municipal liability. Presumably, it did so on the grounds that the City could not be liable if its employees engaged in no illegal acts.

## III.

### 1. Standard of Review

This court reviews grants of summary judgment *de novo*. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir.2002). Where the moving party has met its burden of establishing the absence of evidence to support the nonmoving party's case, we will reverse a grant of summary judgment where the nonmoving party raises genuine issues of material fact in its response papers, presenting "affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 403 (6th Cir.1992).

### 2. Claims Based Upon Fourth Amendment Violations

The district court was correct to determine that Prose could not raise a genuine issue of material fact supporting his allegation that the police lacked probable cause to ticket him for the 1996 and 1999 incidents. Regarding the 1996 incident, a reasonable officer arriving on the scene could have determined that probable cause existed to cite Prose for disorderly conduct because the officer would have witnessed Prose and Dameron engaged in a heated verbal confrontation caused by Prose turning off the cherry-picker. Lieutenant Ochal's detention of Prose in the back of the police car was justified as an investigative detention necessary to prevent Prose from leaving the scene before all of the evidence was collected. Regarding the 1999 incident, because the record of the testimony before Magistrate Johnson cannot be located, Prose cannot effectively rebut the deposition testimony of Wendover and Repeck indicating that Johnson heard sworn testimony of incidents of Prose's stalking.

■ As for the 1998 incident, we need not reach the question of whether the police had probable cause to cite Prose for any violation. Because Prose was only issued an appearance ticket, and no evidence in the record indicates that he was ever required to appear before a court and answer the charges. Prose cannot demonstrate that he suffered a seizure under the law of this circuit. *DePiero v. City of Macedonia,* 180 F.3d 770, 789 (6th Cir.1999) (holding that a seizure is not affected by the mere issuance of a ticket). Consequently, the district court was correct to conclude that Prose did not suffer any Fourth Amendment violation as a result of any of the three incidents about which he complains.

Because the district court correctly determined that Prose suffered from no Fourth Amendment violation, it was also correct to determine that Prose's conspiracy claim fails as a matter of law. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks,* 771 F.2d 935, 943–44 (6th Cir.1985). In the absence of a Fourth Amendment violation, there is no evidence on the record demonstrating that the defendants intended to injure Prose by engaging in unlawful action. Accordingly, the district court correctly granted the defendants summary judgment on Prose's conspiracy claim.

The district court also properly granted summary judgment in favor of the City on Prose's municipal liability claims stemming from the purported Fourth Amendment violations. A municipality cannot be held liable under 42 U.S.C. § 1983 unless one of its employees is also held liable.

■ Summary judgment in favor of the City was also warranted on Prose's claim that the City maintained a policy or practice permitting retaliation. The intent of a municipal employee is relevant to a § 1983 claim against that employee premised upon retaliation, regardless of the legality of that employee's action. *Bloch v. Ribar,* 156 F.3d 673, 681–82 (6th Cir.1998). However, Prose has not produced evidence sufficient for a jury to conclude that the City maintained a policy or practice permitting employees to engage in retaliation, and accordingly, the City cannot be held liable for any retaliatory acts of its employees.

■ Finally, the district court properly granted summary judgment in favor of Wendover and Repeck, and presumably granted summary judgment in favor of Carne as well, on the grounds that nonmunicipal employees cannot be held liable under § 1983 where no municipal employee had committed any unlawful act. Because that finding comports with the case law, we affirm the district court's determination on this issue as well.

*3. Claims Based Upon First Amendment Violations*

■ Prose claims that the police officers and the City should be held liable under 42 U.S.C. § 1983 for the enforcement of the ordinance barring the use of profanity in the presence of women and children, an ordinance he argues violates the First Amendment. However, the district court correctly found that the police officers were entitled to qualified immunity. Because the only court to have considered the ordinance in question, a federal district court, concluded that it was not "patently and flagrantly unconstitutional," the officers were entitled to qualified immunity from a claim that they violated the First Amendment by attempting to enforce it. *Prak v. Gregart,* 749 F.Supp. 825, 826 (W.D.Mich.1990). In addition. Prose has failed to come forward with any evidence substantiating his claim that the City was "deliberately indifferent" to the officers' "sanctioning [of] the charges ac-

cusing [him] of criminal conduct for using speech that is protected under the First Amendment." Accordingly, the district court properly granted summary judgment to defendants on Prose's First Amendment claims.

## IV.

For the foregoing reasons, the judgment of the district court is **affirmed**.