# United States Court of Appeals

## For the Eighth Circuit

_____

No. 24-3316

_____

Robert Ward,

*Plaintiff - Appellant*,

v.

City of Sherwood, Arkansas, an Arkansas municipality; Matt Harris, in his individual capacity; Jacqueline Schichtl, in her individual capacity; Clifford Manek, in his individual capacity,

*Defendants - Appellees*.

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: November 19, 2025
Filed: April 28, 2026

_____

Before COLLOTON, Chief Judge, SHEPHERD and ERICKSON, Circuit Judges.

_____

COLLOTON, Chief Judge.

Robert Ward sued Officer Matt Harris for allegedly violating his constitutional rights during an arrest. The district court[*] granted Harris's motion for summary judgment based on qualified immunity. We conclude that Harris did not violate Ward's clearly established rights, and therefore affirm.

I.

The appeal arises after a motion for summary judgment, so we consider the evidence in the light most favorable to Ward, the non-movant. On June 13, 2019, Officer Harris and Officer Jacqueline Schichtl responded to a noise complaint at Ward's home. Ward and his wife greeted the officers outside. Ward provided his name, and Mr. and Mrs. Ward volunteered that they both worked in law enforcement. Officer Harris then asked for Ward's telephone number, and Ward responded by asking, "Why?" Harris explained that he had been instructed to prepare an "information report," and Ward asked who gave the instruction. Harris explained that his supervisor, a police sergeant, gave the instruction. Ward asked Harris to summon the supervisor to the house.

Ward then questioned the officers about their experience with the police department. Ward's wife implored him to stop, and to refrain from giving the officers a hard time because they were just doing what they were told to do. She said, "Don't act bad. Don't act up." Ward, shifting from side to side with his arms crossed, said, "I just don't like rookies coming and questioning me." Ward stated that he had twenty-two years of law enforcement experience and asked the officers about the

[*]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas, now deceased.

length of their tenure.  Mrs. Ward moved in front of Ward and said, "Baby, you're going to go in the house if you can't act right."

Ward said that he was "not trying to be an ass," but then referred to the "stupid motherf***ers who live behind" him.  Harris told Ward that "we're not going to use foul language."  Ward replied, "In my yard, yes I will, sir."  Harris explained that there were children present, that they were in public, and that they were not going to use foul language.  Harris said, "I'm telling you right now, that's your only warning."

Ward responded, "Get your sergeant out here, right now.  Don't you threaten me."  Harris said that he was not threatening Ward, but that "we're not using foul language out here."  After Ward replied, "Really?," Mrs. Ward moved directly in front of Ward and said, "Robert, stop!  I'm asking you; it's our anniversary.  Please stop. Please stop. Stop."  Ward moved from side to side to see around his wife to the officers, and Mrs. Ward implored him to "calm down" and "stop."

Ward then said to Harris, "You're not going to tell me what I'm gonna do in my yard."  Harris reiterated that there were "children present," and "we're not gonna use foul language out in public."  Ward's retort:  "You think you can push that, go ahead."  Mrs. Ward again asked Ward to "stop" and said that the officers were only doing what they were told to do, because "the idiots that live behind us are jerks."

Ward continued to move back and forth as his wife stood between Ward and the officers.  Ward said, "I'm not gonna let a rookie tell me —."  Mrs. Ward again beseeched him to "stop, stop, please just stop."  But Ward continued to move back and forth and told Harris that he may want to "tell your sergeant to go Code 3."  Mrs. Ward exclaimed "Robert!," looked at the officers, and shook her head.  She turned back to Ward and asked him to "just sit over there until their sergeant gets here."  Ward declined, looked at Harris, and said he would stay "right here and look at him."

Ward acknowledges that "Code 3" is a law enforcement term for situations "to which an officer is to respond with lights and sirens activated," including emergencies. Ward maintains, however, that the term also applies to "lesser situations" such as traffic accidents or a situation where a "less-experienced law enforcement officer is unable to properly respond."

Mrs. Ward asked Ward whether the officers had been "rude or nasty." Ward said, "No," and Mrs. Ward said, "Then let's not be rude or nasty." Ward then stepped toward the officers, with Mrs. Ward still in between, and said "Don't threaten me with a charge either." Mrs. Ward said, "Don't baby. It's not worth it. It's not worth it." She asked Ward again to stop. Ward continued to peer around his wife, and said "No, I wanna look at him."

Mrs. Ward told the officers that the only people in the neighborhood who had a problem with anything were the neighbors who had "destroyed" the backyard of the Wards. Harris asked, "What's their name?" Mrs. Ward said she did not know and asked whether others present knew the name. Ward looked at Harris and said, "F***heads."

Harris then stated: "Come on, I already gave you the one warning. Let's go to jail." Harris attempted to handcuff Ward. Ward resisted by refusing to put his hands behind his back, and told Harris several times to "wait on your sergeant." Harris attached a handcuff to Ward's wrist. He then executed a takedown maneuver that caused Ward's head to hit a decorative brick on the ground such that Ward sustained a bloody head injury.

When medics arrived, Harris removed the handcuff, and Ward was transported to the hospital. The prosecuting attorney filed formal charges against Ward for disorderly conduct, resisting arrest, and public intoxication. The charges were "passed" for a year, meaning that they would be dismissed if Ward committed no

violations of law during that period. The charges were ultimately dismissed on that basis in November 2020.

Ward sued Officer Harris under 42 U.S.C. § 1983 alleging violations of his rights under the Fourth Amendment and First Amendment. The district court granted summary judgment for Harris on all claims based on qualified immunity.

## II.

## A.

Qualified immunity shields a government official from suit under § 1983 if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Ward first claims that Officer Harris arrested him without probable cause, in violation of the Fourth Amendment. "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least arguable probable cause." *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011) (internal quotation omitted). Whether arguable probable cause existed is a question of law for the court to determine. *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010).

Under Arkansas law, a person commits disorderly conduct "if, with the purpose to cause public inconvenience, annoyance, or alarm or recklessly creating a risk of public inconvenience, annoyance, or alarm, he or she . . . [e]ngages in fighting or in violent, threatening, or tumultuous behavior." Ark. Code Ann. § 5-71-207(a)(1)

(2025). "A public inconvenience, annoyance or alarm can occur due to an individual's conduct whether the individual and the people are on public *or* private property." *M.T. v. State*, 350 S.W.3d 792, 795 (Ark. Ct. App. 2009). A person acts recklessly if he "consciously disregards a substantial and unjustifiable risk that . . . the result will occur" and "disregard of the risk constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation." Ark. Code Ann. § 5-2-202(3) (2025).

The Arkansas Supreme Court has held that a defendant's erratic behavior, loud cursing, flailing of arms, and clenching of fists was sufficient to support a conviction for disorderly conduct. *Johnson v. State*, 37 S.W.3d 191, 195 (Ark. 2001). The Arkansas Court of Appeals affirmed a conviction for disorderly conduct where the defendant cursed at officers and tree-service employees, aggressively ran from person to person confronting them (both inside and outside a designated work area), and caused others to feel intimidated and concerned for their well-being. *Watkins v. State*, 377 S.W.3d 286, 291 (Ark. Ct. App. 2010). A second Arkansas Supreme Court decision held that there was probable cause to arrest a subject for disorderly conduct where an angry and belligerent woman disrupted staff's ability to work in the dispatch area of a sheriff's office, even though she did not act violently, damage property, threaten anyone, approach anyone aggressively, or curse any person. *Graham v. Cawthorn*, 427 S.W.3d 34, 37-38, 41 (Ark. 2013). The court explained that the officer could not calm the suspect, that she was in a near rage, and that police officers may consider a person's demeanor in deciding whether to arrest for disorderly conduct. *Id*. at 41.

In this case, Ward demonstrated hostility toward Harris, whom he demeaned as a "rookie," stared down Harris, and repeatedly advanced toward Harris while Mrs. Ward blocked his path. Ward disregarded Harris's instructions to refrain from using profanity within earshot of a public area with children present. Ward suggested that Harris should have his sergeant "go Code 3," a statement that a reasonable officer

could construe to mean that the situation required a rapid emergency response. In context, the reference to "go Code 3" suggested that Ward intended to take aggressive action that warranted an urgent response. A determination of probable cause is based on the totality of the circumstances. Ward's aggressive movements, belligerent demeanor, and references to going "Code 3" support a determination of arguable probable cause. A reasonable officer, even if mistaken, could have believed that Ward engaged in threatening or tumultuous behavior while purposely causing, or recklessly creating a risk of, public inconvenience, annoyance, or alarm.

Ward argues that the term "Code 3" is not necessarily threatening, and that there is a factual dispute about whether his actions were objectively threatening or tumultuous. He also contends that the district court improperly ignored evidence that Harris "did not subjectively feel threatened." The question, however, is not whether a jury could find that Ward's actions were not actually threatening or tumultuous, or whether Harris subjectively felt threatened. Under the Fourth Amendment and the doctrine of qualified immunity, the court must consider only whether a reasonable officer objectively could have construed Ward's actions to establish probable cause for a violation of the disorderly conduct statute. This is a legal question for the court.

For these reasons, the district court correctly granted judgment for Harris on the claim alleging an unlawful seizure without probable cause. We need not address whether there was arguable probable cause to believe that Ward committed violations other than disorderly conduct. *See Hosea v. City of St. Paul*, 867 F.3d 949, 956 n.6 (8th Cir. 2017).

B.

Ward also claims that Officer Harris violated his First Amendment right to freedom of speech by arresting him in retaliation for his use of profanity. To defeat qualified immunity on a retaliatory arrest claim, a plaintiff is generally required to

show that the officer lacked arguable probable cause to arrest him on proper grounds. *Just v. City of St. Louis*, 7 F.4th 761, 768 (8th Cir. 2021).  We have concluded that there was arguable probable cause to arrest for disorderly conduct.

The Supreme Court has carved out a "narrow" exception to this rule where "officers have probable cause to make arrests, but generally exercise their discretion not to" do so.  *Nieves v. Bartlett*, 587 U.S. 391, 406 (2019).  Under *Nieves*, "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when other similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407.

Ward cites the fact that Harris made the arrest right after Ward engaged in what he describes as protected speech (*i.e.*, his use of profanity to describe his neighbors). He argues that protected speech was "plausibly the but-for cause" of the arrest.  We doubt it is clearly established for purposes of qualified immunity that Ward's use of profanity in the presence of children, after a warning to desist, is protected speech. *See Prose v. Wendover*, 96 F. App'x 358, 364 (6th Cir. 2004); *Prak v. Gregart*, 749 F. Supp. 825, 829 (W.D. Mich. 1990).  But even assuming it were, Ward did not present objective evidence that officers generally have exercised their discretion to refrain from arresting persons who engaged in conduct similar to Ward's without using profanity.  "[T]he statements and motivations of the particular arresting officer are irrelevant at this stage," *Nieves*, 587 U.S. at 407 (internal quotation omitted), so evidence of Harris's subjective motivation does not carry the day. Without objective evidence that the officers engaged in an unusual exercise of discretion, the existence of arguable probable cause to arrest Ward for disorderly conduct defeats his claim alleging retaliatory arrest.  *Just*, 7 F.4th at 769.

C.

Ward next argues that even if Officer Harris had arguable probable cause to effect a seizure, Harris's takedown maneuver violated Ward's right to be free from unreasonable seizures because the amount of force employed was unreasonable. Ward contends that the district court erred in focusing "on a few seconds of video showing minor noncompliance" and mistakenly "credited Harris's testimony that Mr. Ward's demeanor was threatening while ignoring contradictory evidence." We analyze an excessive force claim under the Fourth Amendment standard of objective reasonableness. *Wertish v. Krueger*, 433 F.3d 1062, 1066 (8th Cir. 2006). We have recognized that "somewhat more force may reasonably be required" to arrest a resisting subject. *Id.* at 1066-67.

We conclude that Harris's takedown maneuver did not violate a clearly established right. As Harris placed his hand on Ward's upper arm, the officer directed Ward to "[p]ut your arms behind your back." Ward responded, "No." Ward then repeated the phrase "wait on your sergeant" four times while Harris attempted to handcuff him. A reasonable officer could have believed that Ward was resisting arrest, and that a takedown maneuver was reasonable use of force to gain control of the resisting suspect. Harris is therefore entitled to qualified immunity on this claim. *See Kelsay v. Ernst*, 933 F.3d 975, 981-82 (8th Cir. 2019) (en banc); *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017).

D.

Ward also appeals the dismissal of his claim that the charge of public intoxication constituted malicious prosecution in violation of the Fourth Amendment. *See Thompson v. Clark*, 596 U.S. 36, 43 & n.2 (2022). Even assuming for the sake of analysis, however, that officers lacked probable cause to charge Ward for public intoxication, he must show that the charge caused a seizure. *Chiaverini v. City of*

*Napoleon,* 602 U.S. 556, 564 (2024). Ward does not argue that the public intoxication charge independently resulted in a seizure, and the record does not support such a finding. Ward was seized based on a charge of disorderly conduct, and a charge of public intoxication did not effect any further seizure. The initiation of charges by itself, or a summons to appear in court on an additional charge, does not constitute a seizure that supports a claim of malicious prosecution. *Brown v. City of Dermott*, 151 F.4th 985, 990 (8th Cir. 2025). Ward does not argue that he was subject to any pretrial restriction based on the public intoxication charge alone, or that Harris imposed any such restriction. *See id*. at 990 n.3. Therefore, even if the public intoxication charge was not supported by probable cause, initiation of the charge does not support a claim of malicious prosecution under the Fourth Amendment.

\* \* \*

The judgment of the district court is affirmed.

_____